IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>S. SEAN MURPHY, ESQ.; and<br>S. SEAN MURPHY, PLLC,<br><br>Defendants. | ELECTRONICALLY FILED<br>Jul 01 2019<br>U.S. DISTRICT COURT<br>Northern District of WV<br><br>Civil Action No. 1:19-cv-132 (Keeley)<br>Judge _____ |

# COMPLAINT

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its Complaint against Defendants S. Sean Murphy, Esq. ("Murphy") and S. Sean Murphy, PLLC ("Murphy Firm" and together with Murphy, "Defendants") alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana.

2. Murphy is an attorney licensed in the State of West Virginia and, upon information and belief, domiciled in and a citizen of the State of West Virginia.

3. The Murphy Firm is a professional limited liability company organized under the laws of the State of West Virginia with its principal place of business in Fairmont, West Virginia. Murphy is, upon information and belief, the sole member of the Murphy Firm.

4. Because Murphy is, upon information and belief, domiciled in and a citizen of the State of West Virginia, the Murphy Firm is a citizen of the State of West Virginia.

4824-4871-0297.2

5. Upon information and belief, no member of the Murphy Firm is a citizen of Montana.

6. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

### I. Background

#### A. Settlement of the United Bank Suit

8. This declaratory judgment action and insurance coverage dispute arises from Defendants' representation of Betty J. Parmer ("Parmer") in a collection dispute with United Bank, Inc. ("United Bank"), as articulated in the suit styled *United Bank, Inc. v. Parmer*, Civil Action No. 17-C-210 (Cir. Ct. Monongalia Cty., W. Va.) ("United Bank Suit").

9. On April 4, 2019, upon information and belief, United Bank and Parmer participated in a mediation of the United Bank Suit, which resulted in a settlement and an agreement by Parmer to pay United Bank a confidential settlement amount ("Settlement Payment").

#### B. Wire Instruction Scam

10. By email correspondence dated April 11, 2019, sent at 7:06 a.m. ("Murphy April 11, 2019 Correspondence"), Murphy requested "wire instructions" for the Settlement Payment from counsel for United Bank, Sean P. George ("George"). A true and correct copy of the Murphy April 11, 2019 Correspondence is attached as Exhibit A.

11. By subsequent email correspondence dated April 11, 2019, sent at 9:39 a.m. ("George April 11, 2019 Correspondence"), George responded to Murphy's request and stated "Will request them and forward on receipt." A true and correct copy of the George April 11, 2019 Correspondence is attached as Exhibit B.

12. By email correspondence dated April 11, 2019, sent at 2:41 p.m. ("Fraudulent April 11, 2019 Correspondence"), a person or group of persons posing as George provided Murphy with wire instructions for transfer of the Settlement Payment. A true and correct copy of the Fraudulent April 11, 2019 Correspondence is attached as Exhibit C.

13. The wire instructions indicated the Settlement Payment should be transferred to:

Chase Bank
5906 Wesley st.
Greenville, Tx 75401
ABA/Routing #: 111000614
Account #:       327882368

Beneficiary
CB VENTURES
9750 royal lane
Dallas Texas 75231

(Exhibit C).

14. Murphy, upon information and belief, provided those exact wire instructions to Parmer's banker, Sandra Drummond at Fulton Bank in Harrisburg, Pennsylvania ("Fulton Bank").

15. On or around April 15, 2019, upon information and belief, on behalf of Parmer, Fulton Bank wire transferred the Settlement Payment according to the wire instructions Murphy provided.

16. On May 3, 2019, upon information and belief, George informed Murphy that United Bank never received the Settlement Payment.

17. The loss of the Settlement Payment, upon information and belief, was reported to Fulton Bank, Chase Bank, and the Federal Bureau of Investigation.

18. Fulton Bank, upon information and belief, attempted but could not recover the Settlement Payment.

### C. Allegations Against Defendants

19. By correspondence to Murphy dated May 23, 2019 ("May 23, 2019 Correspondence"), George contended the wire instructions Murphy transmitted to Fulton Bank for transfer of the Settlement Payment were incorrect; George stated he did not provide Murphy with the "bogus instructions" and alleged "Mrs. Parmer's bank and [Murphy] had a duty to verify the instructions as accurate before acting upon them." (May 23, 2019 Correspondence at 1. A true and correct copy of the May 23, 2019 Correspondence is attached as Exhibit D.).

20. In the May 23, 2019 Correspondence, George demanded Defendants "contact law enforcement to see if they will investigate" and requested the parties participate in a status conference with the Court in the United Bank Suit regarding loss of the Settlement Payment. (Exhibit D at 1).

## II. The Policy

21. ALPS issued Lawyers Professional Liability Insurance Policy No. ALPS15426-7 to the Murphy Firm for the policy period August 31, 2018 to August 31, 2019. A true and correct copy of the Policy is attached as Exhibit E.

22. Murphy is listed as the sole individual insured attorney under the Policy. (Exhibit E, Declarations Item 3).

23. The Policy provides legal professional liability insurance on a claims made and reported basis. (Exhibit E, Insuring Agreements § 1.A).

24. The Policy's insuring agreement states, in relevant part:

A.   COVERAGE

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied:

1. The Claim arises from a Wrongful Act that occurred on or after the Retroactive Coverage Date set forth in Item 2 of the Declarations;

2. At the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim;

3. Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date; and

4. The Claim is not otherwise covered under any other insurance policy that the Company has issued to the Named Insured.

B.   DEFENSE AND CLAIM EXPENSES

\* \* \*

2. . . . The Company shall not have a duty to defend or to pay such [claim] expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit E, Insuring Agreements §§ 1.A-1.B) (emphasis in original).

25.     "Claim" is defined in the Policy as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured[.]"  (Exhibit E, Definitions § 2.C).

26.     The Policy provides: "Claim does _not_ mean _nor_ include any demand, service or proceeding arising from or in connection with any actual or alleged:"

> 4.  Security breach, unauthorized access, unauthorized use or misuse of any Computer Systems; [or]
>
> 5.  Theft, unauthorized use or misuse of any login information, access information or identification, or personally identifiable information including, but not necessarily limited to, any password, username, social security number or other code or identifier intended for use in accessing any Computer Systems, account, website or the internet[.]

(Exhibit E, Definitions §§ 2.C.4, 2.C.5) (emphasis in original).

27.     "Computer Systems" is defined in the Policy as "computers, information systems, servers, hardware, software, and associated input and output devices, data storage devices, networking equipment, back up facilities and any other associated or connected electronic devices, including mobile devices."  (Exhibit E, Definitions § 2.F).

28.     "Damages" is defined in the Policy as any "[m]onetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "Damages", in relevant part:

> 6.  Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; [or]
>
> 7.  Injury or damage to, destruction of, loss of, or loss of use of any funds or property.

(Exhibit E, Definitions § 2.H).

29. The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]" (Exhibit E, Exclusions § 3.H) (emphasis in original).

30. The Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]" (Exhibit E, Exclusions § 3.I) (emphasis in original).

### III. ALPS's Coverage Position

31. By correspondence dated May 6, 2019, Defendants first provided ALPS with notice of a potential claim ("Potential Claim") arising out of the loss of the Settlement Payment.

32. By correspondence dated May 17, 2019, Defendants provided ALPS with additional information regarding the Potential Claim and requested ALPS provide Defendants with a defense against the Potential Claim under the Policy.

33. By correspondence dated June 5, 2019, ALPS provided Defendants with ALPS's coverage position regarding the Potential Claim.

34. Other than the allegations described above in Paragraphs 16 through 20, as of the date of the filing of ALPS's Complaint in this matter, ALPS is not aware of any specific demands or claims asserted against Defendants by United Bank, Parmer, or any other potential claimant arising out of the loss of the Settlement Payment. ALPS reserves the right to amend its

Complaint to add parties, causes of action, or allegations in the event, *inter alia*, a specific demand or claim is alleged against Defendants.

## FIRST CAUSE OF ACTION

### (For a Declaration the Policy Does Not Afford Coverage to Defendants for the Potential Claim)

35. ALPS incorporates and realleges paragraphs 1 through 34 as if fully set forth herein.

36. The Policy does not afford coverage for the Potential Claim to the extent any exclusions in the Policy apply to exclude coverage. (Exhibit E, Exclusions § 3).

37. The Policy excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property[.]" (Exhibit E, Exclusions § 3.H) (emphasis in original).

38. The Potential Claim arises from or in connection with the loss of the Settlement Payment—which consisted of Defendants' client's funds to be used to pay United Bank in settlement of the United Bank Suit—to a criminal actor or actors.

39. The following events, upon information and belief, caused or contributed to loss of the Settlement Payment: (a) Murphy received wire instructions for the Settlement Payment by email from a criminal actor posing as United Bank's counsel; (b) Murphy subsequently conveyed those fraudulent wire instructions to his client's banker at Fulton Bank; and (c) Fulton Bank wired the Settlement Payment to the criminal actor in accordance with the instructions Murphy provided to Fulton Bank. (*See, e.g.*, Exhibit C; Exhibit D at 1).

40. Murphy exercised direct or indirect control over the Settlement Payment when he conveyed wire transfer and payment instructions to Fulton Bank.

41. The Potential Claim is outside the coverage afforded by the Policy because it arises from or in connection with conversion, misappropriation, wrongful disbursement, improper commingling, or negligent supervision *by any person* of client funds or property, or funds or property of any other person, held or controlled by an insured in any capacity or under any authority. (Exhibit E, Exclusions § 3.H).

42. The Policy excludes coverage for "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]" (Exhibit E, Exclusions § 3.I) (emphasis in original).

43. The Potential Claim arises from or in connection with the loss of the Settlement Payment as a result of Defendants' conveyance of fraudulent wire instructions to Fulton Bank, which transferred the Settlement Payment into the account of a criminal actor or actors. (*See*, *e.g.*, Exhibit C; Exhibit D at 1).

44. Murphy exercised direct or indirect control over the Settlement Payment when he conveyed wire transfer and payment instructions to Fulton Bank.

45. The Potential Claim is outside the coverage afforded by the Policy because it seeks, directly or indirectly, the return or reimbursement of funds or property held or controlled at any time by an insured in any capacity or under any authority. (Exhibit E, Exclusions § 3.I).

46. The Policy does not afford coverage for the Potential Claim to the extent the relief requested does not constitute "Damages" as defined in the Policy. (Exhibit E, Insuring Agreements § 1.A & Definitions § 2.H).

47. The Policy specifically excludes from the definition of Damages "restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured[.]" (Exhibit E, Definitions § 2.H.6).

48. The Potential Claim arises from or in connection with the loss of the Settlement Payment as a result of Defendants' conveyance of fraudulent wire instructions to Fulton Bank, which wire transferred the Settlement Payment into the account of a criminal actor or actors. (*See*, *e.g.*, Exhibit C; Exhibit D at 1).

49. Murphy exercised direct or indirect control over the Settlement Payment, *i.e.*, Parmer's funds, when Murphy conveyed wire payment instructions to Fulton Bank in connection with settlement of the United Bank Suit.

50. Any amounts sought in the Potential Claim would be excluded from the definition of "Damages" and outside the coverage afforded by the Policy because they necessarily include "restitution, reduction, disgorgement or set-off" of funds held or in any manner directly or indirectly controlled by an insured. (Exhibit E, Definitions § 2.H.6).

51. The Policy specifically excludes from the definition of Damages "loss of, or loss of use of any funds or property." (Exhibit E, Definitions § 2.H.7).

52. The Potential Claim alleges loss of the Settlement Payment as a result of Defendants' conveyance of fraudulent wire instructions. (*See*, *e.g.*, Exhibit D at 1).

53. Any amounts sought in the Potential Claim would be excluded from the definition of "Damages" and outside the coverage afforded by the Policy because they necessarily include compensation for "[i]njury or damage to, destruction of, loss of, or loss of use of funds or property." (Exhibit E, Definitions § 2.H.7).

54. The Policy only affords coverage with respect to damages arising from or in connection with a "Claim"—as defined in the Policy—against an insured. (Exhibit E, Insuring Agreements § 1.A).

55. The Policy provides: "Claim does *not* mean *nor* include any demand, service or proceeding arising from or in connection with any actual or alleged:"

   4. Security breach, unauthorized access, unauthorized use or misuse of any Computer Systems; [or]

   5. Theft, unauthorized use or misuse of any login information, access information or identification, or personally identifiable information including, but not necessarily limited to, any password, username, social security number or other code or identifier intended for use in accessing any Computer Systems, account, website or the internet[.]

(Exhibit E, Definitions §§ 2.C.4, 2.C.5) (emphasis in original).

56. "Computer Systems" is defined in the Policy as "computers, information systems, servers, hardware, software, and associated input and output devices, data storage devices, networking equipment, back up facilities and any other associated or connected electronic devices, including mobile devices." (Exhibit E, Definitions § 2.F).

57. The Potential Claim, upon information and belief, arises from or in connection with the following sequence of events: (a) Murphy received an email from the email account of United Bank's counsel, George, with wire payment instructions for the Settlement Payment; (b) those instructions directed the Settlement Payment be transferred to a Chase Bank account in

Texas; (c) Fulton Bank wire transferred the Settlement Payment to the Chase Bank account in Texas, according to Defendants' instructions; and (d) the Settlement Payment has been lost.

58. George alleges he did not provide Defendants with "the bogus instructions" for transferring the Settlement Payment to the Chase Bank account in Texas. (Exhibit D at 1).

59. The loss of the Settlement Payment to a criminal actor or actors appears to have arisen from or in connection with a security breach, unauthorized access, unauthorized use, or misuse of "Computer Systems", or unauthorized use or misuse of related access information.

60. The Policy does not afford coverage for the Potential Claim to the extent it arises from or in connection with any actual or alleged (a) security breach, unauthorized access, unauthorized use, or misuse of any Computer Systems or (b) theft, unauthorized use, or misuse of any login information, access information or identification, or personally identifiable information intended for use in accessing any Computer Systems, account, website, or the internet. (Exhibit E, Insuring Agreements § 1.A & Definitions §§ 2.C.4, 2.C.5, and 2.F).

61. An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Potential Claim.

62. Because the Potential Claim is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Potential Claim and ALPS has no duty to defend or indemnify Defendants with respect to the Potential Claim.

**WHEREFORE**, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1. Declaring the Policy does not afford coverage to Defendants with respect to the Potential Claim;

2. Declaring ALPS has no duty to defend or indemnify Defendants under the Policy with respect to the Potential Claim; and

3. Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.


Dated:  July 1, 2019                        /s/ *Tiffany R. Durst*
                                            Tiffany R. Durst, #7441
                                            **Pullin, Fowler, Flanagan, Brown & Poe, PLLC**
                                            2414 Cranberry Square
                                            Morgantown, West Virginia 26508
                                            Telephone: (304) 225-2200
                                            Facsimile: (304) 225-2214
                                            Email: tdurst@pffwv.com

                                            *Counsel for Plaintiff ALPS Property & Casualty Insurance Company*