# EXHIBIT E

ALPS

Lawyers Professional Liability Insurance Policy

**HOME OFFICE ADDRESS:**
111 N. Higgins, Suite 200
Missoula, MT 59802

***PHONE:***
(800) 367-2577

**MAILING ADDRESS:**
PO Box 9169
Missoula, MT 59807-9169

## POLICY DECLARATIONS

NOTICE: THE POLICY IS A CLAIMS MADE AND REPORTED POLICY. NO COVERAGE EXISTS UNDER THE POLICY FOR A CLAIM WHICH IS FIRST MADE AGAINST THE INSURED OR FIRST REPORTED TO THE COMPANY BEFORE OR AFTER THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE READ THE ENTIRE POLICY CAREFULLY.

POLICY NUMBER: ALPS15426- 7

Item 1 – Named Insured: S. Sean Murphy, PLLC
Address: 19 Franklin Farms Drive
PO Box 2528
Fairmont, WV 26555

Item 2 – Retroactive Coverage Date: 02/01/1996

Item 3 – Name of Each Insured Attorney:

Murphy, S. Sean

Item 4 – Policy Period:

| | | |
|---|---|---|
| Effective Date and Time: | 08/31/2018 | at 12:01 AM at the address stated in Item 1. |
| Expiration Date and Time: | 08/31/2019 | at 12:01 AM at the address stated in Item 1. |

Item 5 – Limit of Liability: $3,000,000 Each Claim*
$3,000,000 Aggregate

Item 6 – Deductible: $5,000 Each Claim*

Item 7 – Annual Premium:

Item 8 – Endorsements attached at inception of the policy form LPL PREMIER (01-18):

Signature Page
Excluded Matter(s)
WV Amendatory
First Dollar Defense Endorsement

* Important Notice: All Claims that arise out of or in connection with the same Professional Services or Related Professional Services, whenever made and without regard to the number of Claims, claimants, or implicated Insureds, shall be treated as a single Claim.

All current and previously submitted application forms delivered to the Company are made a part of the Policy. The Named Insured may obtain a copy of all application forms by submitting a written request to the Company.

Countersigned by: Mark Rabe
Authorized Representative

Date: August 15, 2018

ALPS

Lawyers Professional Liability Insurance Policy

Named Insured: S. Sean Murphy, PLLC

Policy No. ALPS15426-7

Effective Date: 8/31/2018

**SIGNATURE PAGE**

IN WITNESS WHEREOF, ALPS Property & Casualty Insurance Company has caused this **Policy** to be executed and attested, but this **Policy** shall not be valid unless countersigned by a duly authorized representative of ALPS Property & Casualty Insurance Company.

[David A. Bell, President]

Bradley D. Dantic

[Bradley D. Dantic, Secretary]

ALPS **Lawyers Professional Liability Insurance Policy Endorsement**

Named Insured: S. Sean Murphy, PLLC

Policy No. ALPS15426- 7

Effective Date: 8/31/2018

**FIRST DOLLAR DEFENSE ENDORSEMENT**

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

SECTION 4 – DEDUCTIBLE, CLAIM EXPENSE ALLOWANCE, LIMIT OF LIABILITY, AND MULTIPLE CLAIMS

Section 4.A.1. and Section 4.A.2. of the **Policy** are deleted in their entirety and replaced to read in their entirety as follows:

A. DEDUCTIBLE

1. For each and every **Claim** covered by this **Policy**, the **Named Insured** shall pay all **Damages** up to the **Deductible** for each and every covered **Claim**. The **Named Insured**'s payment of all **Damages** up to the **Deductible** for each and every covered **Claim** is a condition precedent to the **Company**'s obligation to pay any **Claim Expenses** or **Damages** for each and every covered **Claim**. Each **Insured** shall be jointly and severally liable for such **Damages** in the event the **Named Insured** fails to make any required payment.

2. The **Company** shall not have any obligation to pay **Damages** until after the **Deductible** is exhausted. If the **Company** pays any amount within the **Deductible**, the **Named Insured** and each **Insured** shall be jointly and severally liable to the **Company** for any and all such amounts paid by the **Company** and, on demand, shall promptly reimburse such amounts to the **Company**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

ALPS

Lawyers Professional Liability Insurance Policy Endorsement

Named Insured: S. Sean Murphy, PLLC

Policy No. ALPS15426- 7

Effective Date: 8/31/2018

## EXCLUDED MATTER ENDORSEMENT

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

SECTION 3 – EXCLUSIONS

The following EXCLUSIONS are added to SECTION 3 - EXCLUSIONS to read in their entirety as follows:

THIS **POLICY** DOES NOT APPLY TO ANY actual or potential **Claim** arising from a **Wrongful Act** in connection with **Professional Services** rendered or that should have been rendered by the **Insured** in relation to the EXCLUDED MATTER described below.

FURTHER, THIS **POLICY** DOES NOT APPLY TO any actual or alleged facts, events, circumstances, transactions or matters relating to the EXCLUDED MATTER described below, or derived from the same or substantially similar facts, events, circumstances, transactions or matters as alleged in or underlying the EXCLUDED MATTER described below.

EXCLUDED MATTER:
The representation of Clarence Fibert in the matter of the alleged mental anguish of Connie Olivito as more fully described by the Insured in the response to Question #15 of the Insured's 2011 application, the 2011 Claims Information Supplement and its attachments.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

## WEST VIRGINIA AMENDATORY ENDORSEMENT

This Endorsement shall apply to and form a part of your **Policy** issued by ALPS Property & Casualty Insurance Company (the "**Company**"). The effective date of this endorsement is the **Effective Date** of your **Policy**.

In consideration of the premium paid, it is understood and agreed that the **Policy** is amended as follows:

SECTION 5 - EXTENDED REPORTING PERIOD

Section D.5 of policy form ALPS-LPL-BASIC (01-18), Section K.5 of policy form ALPS-LPL-PREMIER (01-18), and Section K.5 of policy form ALPS-LPL-PREFERRED (01-18), are deleted in their entirety and replaced to read in their entirety as follows:

5. No **Extended Reporting Period Endorsement** under this section, nor any continuation thereof, shall be available to the **Named Insured**, and if issued shall be deemed automatically canceled, where:

   (a) The **Company** cancels or rescinds this **Policy** or any other policy for misrepresentation in any application or other submission to the **Company**;

   (b) Any **Insured** fails to comply with the terms and conditions of this **Policy** or any other policy, including any **Extended Reporting Period Endorsement** or any other endorsements; or

   (c) Any **Insured's** license or right to practice law has been revoked, suspended by or surrendered at the request of any regulatory authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

ALPS — PREMIER
Lawyers Professional Liability Insurance Policy

PLEASE READ THE ENTIRE POLICY CAREFULLY

## CLAIMS MADE AND REPORTED POLICY

This is a "*CLAIMS MADE AND REPORTED*" insurance **Policy**. Therefore, as a condition precedent to the **Company**'s obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** must immediately report any **Claim** to the **Company** during the **Policy Period** or during any applicable **Extended Reporting Period**. No coverage exists under this **Policy** for a **Claim** which is first made against the **Insured** or first reported to the **Company** before or after the **Policy Period** or any applicable **Extended Reporting Period**. If the **Insured** receives notice of a **Claim**, or becomes aware of a **Wrongful Act** that could reasonably be expected to be the basis of a **Claim**, then the **Insured** must, as a condition precedent to the **Company**'s obligation to defend or indemnify any **Insured**, immediately deliver a written notice directly to the **Company** via email, facsimile, or mail at any of the following:

NOTICE OF CLAIM

Email: Claims@alpsnet.com

Facsimile: 406-728-7416

Mail Address: ALPS
111 N. Higgins, Ste. 200
P.O. Box 9169
Missoula, MT 59807-9169

If you deliver notice of a **Claim** or circumstances which may give rise to a **Claim** to the **Company** via email at Claims@alpsnet.com you must then receive an email from the **Company** Account Center Portal acknowledging receipt of the notice before the notice is considered to have been received. If you do not receive an acknowledging email from the **Company** by the end of the next business day after delivering a notice to the **Company** via email, then please contact the **Company** at 406-728-3113 for further assistance.

## CLAIM EXPENSE ALLOWANCE

This **Policy** provides a **Claim Expense Allowance**. The **Company**'s payment of any **Claim Expenses** will first be applied against and reduce the **Claim Expense Allowance**. Any **Claim Expenses** paid by the **Company** will not be applied against or reduce the **Limit of Liability** until after the **Claim Expense Allowance** has been exhausted, at which time any additional **Claim Expenses** paid by the **Company** will be applied against and reduce the **Limit of Liability** available to pay **Damages**.

## SEPARATE AND DISTINCT POLICY AND LIMIT OF LIABILITY

This **Policy** is a separate insuring agreement and distinct from any other insurance policy the **Company** may issue to you. Each insurance policy the **Company** issues to you should be considered to be a separate and independent insuring agreement with its own separate terms, conditions and definitions. No coverage is afforded under this **Policy** for any **Claim** that is otherwise covered under any other insurance policy the **Company** issues to you. The limits of liability provided by each separate insurance policy the **Company** issues to you shall not be added together with the limits of liability of any other insurance policy the **Company** issues to you.

ALPS Property & Casualty Insurance Company (herein called "the **Company**"), agrees with the **Named Insured**, in consideration of the payment of the premium, and in reliance upon all applications, documents and information that the **Named Insured** has submitted for this **Policy** and any prior policies, as follows:

## SECTION 1 – INSURING AGREEMENTS

A. COVERAGE

Subject to the **Limit of Liability**, exclusions, conditions and other terms of this **Policy**, the **Company** agrees to pay on behalf of the **Insured** all sums (in excess of the **Deductible** amount) that the **Insured** becomes legally obligated to pay as **Damages**, arising from or in connection with A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND FIRST REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD**, provided that all of the following conditions are satisfied:

1. The **Claim** arises from a **Wrongful Act** that occurred on or after the **Retroactive Coverage Date** set forth in Item 2 of the **Declarations**;
2. At the **Effective Date** of this **Policy**, no **Insured** knew or reasonably should have known or foreseen that the **Wrongful Act** might be the basis of a **Claim**;
3. Notice of the **Claim** or the **Wrongful Act** was not given nor required to be given to any other insurer prior to the **Effective Date**; and
4. The **Claim** is not otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured**.

B. DEFENSE AND CLAIM EXPENSES

1. For any **Claim** covered under this **Policy**, the **Company** shall have the right and the duty to defend such **Claim** even if any or all of the allegations of the **Claim** are groundless, false or fraudulent, but shall have no obligation to appoint legal counsel to defend a **Claim** that is not the subject of a pending civil action, arbitration, or similar proceeding seeking the recovery of compensatory damages. The **Company** shall have the right to appoint legal counsel in the **Company's** sole discretion after consultation with an **Insured** when practicable; consultation with any one **Insured** being sufficient.
2. The **Company** shall pay **Claim Expenses** in accordance with the terms of this **Policy**. The **Company** shall not have a duty to defend or to pay such expenses as to any **Claim** not covered under this **Policy**, and shall have the right to seek reimbursement from any **Insured**, who shall promptly provide such reimbursement, for any amount paid by the **Company** in defending any such non-covered **Claim**, including any amount paid in defending a non-covered **Claim** that is asserted together with one or more covered **Claims**.
3. The **Company** may make such investigations as it deems appropriate.
4. Where an **Insured** has a right or obligation to arbitrate a **Claim**, or receives a demand for arbitration, the **Company** shall have sole discretion as to whether to seek, agree to or reject arbitration.
5. In the event a **Claim** covered under this **Policy** is made against an **Insured**, and in the same matter a **Claim** is also made against a non-attorney who referred to the **Insured** the matter from which the **Claim** arises, the **Company** shall provide the same defense to the referring party as to the **Insured**, but only for so long as the **Insured** remains liable to pay **Damages** arising from or in connection with the **Claim** against the **Insured**, and, provided, however, that such referring party shall accept the same legal counsel to defend the **Claim** as the **Company** appoints to represent the **Insured**. The **Company** shall have no other obligation to the referring party, including any obligation to pay any **Damages** or other **Claim Expenses** on the referring party's behalf. Any **Claim Expenses** associated with the defense of the referring party shall be subject to the **Deductible**, and shall be included within, and shall not increase, the **Claim Expense Allowance** and the **Limit of Liability**.

C. SETTLEMENT AND CONSENT TO SETTLE

The **Company** will not admit liability of any **Insured** or settle a **Claim** without the written consent of any **Insured**, which consent shall not be unreasonably withheld.

D. SUPPLEMENTARY PAYMENTS

1. Loss of Earnings

If the **Company** requests in writing that an **Attorney** identified in Item 3 of the **Declarations** attend a trial, hearing or arbitration proceeding concerning a covered **Claim**, and if the **Named Insured** demonstrates that the **Attorney** lost fees or other earnings as a result of such attendance, the **Company** shall pay up to $1,000 per day to the **Named Insured** for such loss of earnings for each attending **Attorney** and for each full or partial day of attendance. The maximum amount payable by the **Company** during the **Policy Period** and **Extended Reporting Period**, if applicable, shall be $50,000, irrespective of the number of **Attorneys**. No **Deductible** shall apply to any such payment. Any such payment shall be applied against and reduce the **Claim Expense Allowance**.

2. Disciplinary Proceedings

If an **Attorney** identified in Item 3 of the **Declarations** first receives notice during the **Policy Period** of a proceeding brought against the **Attorney** before a state licensing board, peer review committee or disciplinary agency or official to investigate allegations of professional misconduct by the **Attorney** other than a **Wrongful Act** arising from or in connection with **Professional Services** of the **Insured** that would otherwise fall within the coverage of this **Policy**, then the **Company** shall reimburse the **Named Insured** for attorneys' fees and expenses incurred by the **Named Insured** in relation to such proceeding, subject to the following conditions:

(a) The maximum reimbursement amount for any one **Attorney** involved in such proceeding shall be $50,000 without regard to the number of such proceedings involving the **Attorney** during the **Policy Period**;

(b) The maximum reimbursement amount shall be $150,000 per **Policy Period** and **Extended Reporting Period**, if applicable, without regard to the number of such proceedings or the number of **Attorneys** listed in Item 3 of the **Declarations**; and

(c) The **Company** shall have the right to appoint legal counsel in the **Company**'s sole discretion after consultation with the **Attorney** that is the subject of the proceedings.

3. Subpoena Assistance

If an **Attorney** listed in Item 3 of the **Declarations** first receives a subpoena during the **Policy Period** for the production of documents or testimony as a fact witness arising out of or related to **Professional Services** rendered by the **Attorney**, then the **Company** shall have the right to and will appoint legal counsel of its choosing to render advice and assistance to the **Attorney** regarding the production of documents, to prepare the **Attorney** for sworn testimony under oath, and to represent the **Attorney** at any deposition, subject to the following conditions:

(a) The **Named Insured** must first deliver the subpoena and a written request to the **Company** seeking the **Company**'s assistance with respect to the subpoena;

(b) The subpoena must be issued in relation to a pending lawsuit or matter to which no **Insured** is a party and to which no **Insured** has been engaged at any time to render **Professional Services**, provide other professional advice, or provide testimony as a witness in connection with the lawsuit or matter; and

(c) The **Company** will pay for the retained legal counsel's fees only, but will not pay for any out of pocket expenses or disbursements incurred by the retained legal counsel or any **Insured**. The maximum amount payable by the **Company** during the **Policy Period** and **Extended Reporting Period**, if applicable, shall be $50,000, irrespective of the number of such subpoenas or **Attorneys** listed in Item 3 of the **Declarations** for which assistance is provided. No **Deductible** shall apply to any such payment. Any such payment shall be applied against and reduce the **Claim Expense Allowance**.

4. Public Relations Event

The **Company** agrees to reimburse the **Named Insured** up to $40,000 for **Public Relations Expenses** incurred by the **Named Insured**, arising from or in connection with a **Public Relations Event** first occurring and first reported to the **Company** during the **Policy Period**. Prior to the **Named Insured** incurring any **Public Relations Expenses**, and as a condition precedent to reimbursement of any **Public Relations Expenses** incurred by the **Named Insured**, the **Company** shall have the right to review and approve the terms and conditions upon which any

public relations firm renders consulting and counseling services to the **Named Insured.** No **Deductible** shall apply to any such payment. Any such payment shall be applied against and reduce the **Claim Expense Allowance.**

E. EXHAUSTION OF LIMIT OF LIABILITY AND TENDER OF REMAINING LIMIT OF LIABILITY

The **Company's** duty to defend shall be fully satisfied, and the **Company** shall not be obligated to continue to defend any **Claim** or pay any **Claim Expenses,** nor be obligated to pay any **Damages,** or interest thereon, after:

1. The applicable **Limit of Liability** has been exhausted by payments of **Damages** and/or **Claim Expenses;** or
2. The **Company** has deposited an amount equal to the applicable **Limit of Liability,** minus any **Damages** paid on the **Claim** and any **Claim Expenses** paid on the **Claim** and chargeable against the **Limit of Liability,** with a court of competent jurisdiction, to be disbursed by the court's order.

In either such case, the **Company** shall have the right to withdraw from further defense of the **Claim** by tendering control of the defense to the **Insured.** The **Insured** agrees, as a condition to the issuance of this **Policy,** to accept such tender.

F. POLICY TERRITORY

This **Policy** applies to any **Wrongful Act** occurring anywhere in the world, provided that a **Claim** otherwise covered by this **Policy** is made within the United States of America, its territories or possessions, or Canada.

## SECTION 2 – DEFINITIONS

As used in this **Policy,** including the **Declarations:**

A. **Attorney** means an individual attorney who is properly licensed to practice law or a professional business entity of which said individual attorney who is properly licensed to practice law is the sole owner and employee; provided, however, that with respect to the **Professional Services** which are the subject of a **Claim,** the individual attorney must have been properly licensed at the time the **Professional Services** were or should have been rendered within the jurisdiction in which the **Professional Services** were or should have been rendered.

B. **Bodily Injury** means any injury to the body, any sickness or disease, or any death. **Bodily Injury** also includes any mental, psychological, or emotional injury, anguish, tension, distress, pain, suffering, shock or death, regardless of whether or not such condition arises from any injury to the body, from any sickness or disease, or from any death.

C. **Claim** means a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the **Insured.**

**Claim** does *not* mean *nor* include any demand, service or proceeding arising from or in connection with any actual or alleged:

1. Discrimination by an **Insured** including, but not necessarily limited to, discrimination based on race, color, creed, age, sex, gender, nationality, marital status or sexual orientation;
2. Sexual harassment or misconduct by an **Insured;**
3. Employment-related matter involving an **Insured** as an employer;
4. Security breach, unauthorized access, unauthorized use or misuse of any **Computer Systems;**
5. Theft, unauthorized use or misuse of any login information, access information or identification, or personally identifiable information including, but not necessarily limited to, any password, username, social security number or other code or identifier intended for use in accessing any **Computer Systems,** account, website or the internet;
6. Infection, damage or loss of use of any **Computer Systems** due to the transmission of or failure to prevent the transmission of any malware, ransomware or malicious code;

7. Notice or written demand arising from or in connection with any disciplinary, investigatory or other proceeding before a state licensing board, peer review committee or governmental regulatory body involving an **Insured Attorney**;

8. Nuclear reaction, radiation or contamination, or any pollution, contamination or condition of any real or personal property, regardless of cause;

9. Advertising or marketing services or activities; or

10. **Bodily Injury** of any person.

D. **Claim Expenses** means:

1. Fees charged by any attorney(s) designated by the **Company** to defend a **Claim** or otherwise represent an **Insured**;

2. All other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a **Claim** (including a suit or proceeding arising in connection therewith), if incurred by the **Company**, or if incurred by the **Insured** with the prior written consent of the **Company**;

3. Premiums for any supersedeas, appeal, attachment or other similar bond approved by the **Company**, but without any obligation of the **Company** to apply for, furnish or issue such bond; and

4. Any supplementary payments incurred or reimbursed by the **Company** under Section 1.D.

**Claim Expenses** does *not* mean *nor* include salaries or other compensation of regular employees or officials of the **Company** or the **Named Insured**.

E. **Claim Expense Allowance** means, with respect to **Claims** first made and first reported during the **Policy Period**, an amount equal to one half of the "Each **Claim**" **Limit of Liability** listed in Item 5 of the **Declarations**, or $1,000,000, whichever is less, and includes the amount of any applicable **Deductible** and any supplementary payments incurred or reimbursed by the **Company** under Section 1.D. The **Claim Expense Allowance** is described further in Section 4.B.

**Claim Expense Allowance** means, with respect to **Claims** first made and first reported during any applicable **Extended Reporting Period**, the applicable **Claim Expense Allowance** further described in Section 5.J.

F. **Computer Systems** means computers, information systems, servers, hardware, software, and associated input and output devices, data storage devices, networking equipment, back up facilities and any other associated or connected electronic devices, including mobile devices.

G. **Contract Attorney** means a non-employee **Attorney** who is or was rendering services for and on behalf of the **Named Insured**, but solely for a **Claim** arising from or in connection with the provision of **Professional Services** by the **Named Insured** or **Predecessor Law Firm**, solely to the extent no other insurance or extension of insurance applies, and solely to the extent said **Contract Attorney**'s services satisfy the following conditions:

1. The services must be rendered to a client of the **Named Insured** in conjunction with the **Named Insured's** rendering of **Professional Services** to such client; and

2. The non-employee **Attorney** must be identified as an **Attorney** in Item 3 of the **Declarations**.

H. **Damages** means any:

1. Monetary award by way of judgment or final arbitration, or any settlement; and

2. Civil liability which may be imposed upon an **Insured** under § 813(a) of the federal Fair Debt Collection Practices Act (codified at 15 U.S.C. § 1692k(a)), as may hereafter be amended from time to time.

**Damages** does *not* mean *nor* include any:

3. Punitive, multiple, or exemplary damages, fines, sanctions, penalties or citations, including, without limitation, any consequential or incidental damages, attorney's fees or costs, or pre-judgment or post-judgment interest resulting therefrom, regardless against whom the same are levied or imposed and regardless of whether the same were levied or imposed in a separate matter or proceeding;

4. Awards deemed uninsurable by law;

5. Injunctive, declaratory, or other equitable relief, or costs or fees incident thereto;

6. Restitution, reduction, disgorgement or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured;

7. Injury or damage to, destruction of, loss of, or loss of use of any funds or property; or

8. Pollution, contamination or erosion of any property.

I. **Declarations** means the Policy Declarations attaching to this **Policy** for the current **Policy Period** listed in Item 4 of the Policy Declarations.

J. **Deductible** means the **Deductible** amount for "Each **Claim**" stated in Item 6 of the **Declarations**. The **Deductible** is described further in Section 4.A.

K. **Effective Date** means 12:01 a.m., at the address stated in Item 1 of the **Declarations**, on the **Effective Date** listed in Item 4 of the **Declarations**.

L. **Exempt Organization** means an **Organization** exempt from taxation within the meaning of the following enumerated sections of 501(c) of the United States Internal Revenue Code: 501(c)(3), 501(c)(4), 501(c)(6), 501(c)(7), 501(c)(8) and 501(c)(10).

M. **Expiration Date** means 12:01 a.m., at the address stated in Item 1 of the **Declarations**, on the **Expiration Date** listed in Item 4 of the **Declarations**.

N. **Extended Reporting Period Endorsement** means an endorsement issued by the **Company** providing for an **Extended Reporting Period** as described in Section 5 for reporting of a **Claim** that: (a) would otherwise be covered by this **Policy**; (b) arises from a **Wrongful Act** that occurred after the **Retroactive Coverage Date** and before the end of the **Policy Period**; and (c) is first made, and first reported to the **Company**, after the end of the **Policy Period** and during the **Extended Reporting Period**.

O. **Extended Reporting Period** means the period of time set forth in an automatic 60-day extended reporting period identified in Section 5.A. or the period of time set forth in an **Extended Reporting Period Endorsement** that the **Company** may issue after expiration or cancellation of the **Policy Period** as described in Section 5.

P. **Formal Mediation** means a voluntary alternative dispute resolution ("ADR") process agreed to by the **Company** and the **Insured** and engaged in without a court order or judicial rule, by which: (i) a qualified professional mediator is chosen by the parties to the **Claim** with agreement by the **Company**; (ii) a specific date, time and duration is established for the ADR process; and (iii) the mediator meets with and intercedes between the parties during the ADR process in an attempt to fully and finally resolve the **Claim**.

Q. **Insured** means the **Named Insured** listed in Item 1 of the **Declarations** and each of the following, but solely for **Claims** arising from **Professional Services** performed for and on behalf of the **Named Insured** or a **Predecessor Law Firm**:

1. An **Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of the **Policy**, a principal, partner, shareholder, member or other owner or employee of the **Named Insured**, and who is or was identified in Item 3 of the **Declarations**, provided that the requirements of this **Policy** concerning amendment of Item 3 of the **Declarations** have been complied with, and only if no other professional liability insurance or extension of professional liability insurance applies to the **Claim**;

2. An **Attorney** who was, before the **Effective Date** of the **Policy**, a principal, partner, shareholder, member or other owner or employee of the **Named Insured** or a **Predecessor Law Firm**, provided that information requested on the application concerning such person has been provided to the **Company**, and only if no other professional liability insurance or extension of professional liability insurance applies to the **Claim**;

3. An **Attorney** acting as "of counsel" under formal contract with the **Named Insured** or a **Predecessor Law Firm**, and who is identified in Item 3 of the **Declarations**, provided that information requested on the application concerning such person has been provided and that the requirements of this **Policy** concerning amendment of Item 3 have been complied with, and only if no other professional liability insurance or extension of professional liability insurance applies to the **Claim**;

4. A non-**Attorney** who is or was an employee of the **Named Insured** or a **Predecessor Law Firm**, solely for **Claims** arising from or in connection with actions within the scope of such person's duties as an employee of the **Named Insured** or a **Predecessor Law Firm**, and arising from or in connection with the rendering of **Professional Services** for and on behalf of the **Named Insured** or a **Predecessor Law Firm**, and only if no other professional liability insurance or extension of professional liability insurance applies to the **Claim**;

5. The heirs, executors, administrators, assigns and legal representatives of an **Insured**, in the event of the **Insured's** death, incapacity or bankruptcy;

6. A **Contract Attorney** who is, at the time a **Claim** is first made, or who was, at the **Effective Date** of this **Policy**, a **Contract Attorney** of the **Named Insured**, and who is or was identified in Item 3 of the **Declarations**;

7. Any **Predecessor Law Firm** listed as an additional **Insured** on an endorsement issued by the **Company** and identified in Item 8 of the **Declarations**; and

8. The spouse or legally recognized domestic partner of an **Insured**, but solely with respect to a **Claim** asserted against such **Insured** that is otherwise covered under this **Policy**; provided, however, that such spouse or legally recognized domestic partner shall accept the same legal counsel to defend the **Claim** as the **Company** appoints to represent the **Insured**, and only if no other professional liability insurance or extension of professional liability insurance applies to the **Claim**.

R. **Limit of Liability** means, with respect to **Claims** first made and first reported during the **Policy Period**, the "Each **Claim**" **Limit of Liability** and the "Aggregate" **Limit of Liability**, as applicable and as listed in Item 5 of the **Declarations**. The **Limit of Liability** with respect to **Claims** first made and first reported during the **Policy Period** includes the amount of any applicable **Deductible** and is described further in Section 4.C.

**Limit of Liability** means, with respect to **Claims** first made and first reported during any **Extended Reported Period**, the applicable **Limit of Liability** further described in Section 5.J.

S. **Named Insured** means the law firm or individual **Attorney** listed as the **Named Insured** in Item 1 of the **Declarations**.

T. **Organization** means any corporation, partnership, limited partnership, limited liability partnership or limited liability company; association; charitable entity, enterprise or organization; health or welfare benefit plan, program, fund or trust; pension, profit-sharing, 401(k) or other retirement benefit plan, program, fund or trust; mutual fund or investment trust; or any other business entity, enterprise or organization of any kind or nature whatsoever. **Organization** does not include a decedent's estate or a trust (other than an investment trust).

U. **Personal Injury** means an injury other than a **Bodily Injury** that results from:

1. False arrest, detention or imprisonment;
2. Wrongful entry or eviction or other invasion of private occupancy;
3. Malicious prosecution;
4. Publication or utterance of libel, slander or other defamatory or disparaging material; and
5. Invasion of privacy, or publication or utterance in violation of an individual's right of privacy.

V. **Policy** means this Lawyers Professional Liability Insurance Policy that the **Company** has issued to the **Named Insured**, including all endorsements attaching hereto, and including all current and previous application forms any **Insured** has delivered to the **Company**.

W. **Policy Period** means the period of time between the **Effective Date** listed in Item 4 of the **Declarations** and the earlier to occur of (a) the **Expiration Date** listed in Item 4 of the **Declarations**, or (b) the date this **Policy** is otherwise terminated or cancelled prior to the **Expiration Date**. **Policy Period** does not mean nor include any **Extended Reporting Period** provided pursuant to Section 5.

X. **Predecessor Law Firm** means any sole proprietorship or legally recognized business entity previously engaged in the private practice of law that: (i) has undergone dissolution; (ii) has been disclosed to the **Company** in the **Named Insured's** application for lawyers professional liability insurance; and (iii) is listed as an additional **Insured** on an endorsement issued by the **Company** and identified in Item 8 of the **Declarations**.

Y. **Professional Services** means services or activities performed for and on behalf of the **Named Insured** or a **Predecessor Law Firm** and rendered solely to others as:

1. An **Attorney** in an attorney-client relationship on behalf of one or more clients applying the **Attorney's** specialized education, knowledge, skill, labor, experience and/or training, including pro bono services;
2. A mediator, arbitrator, or other facilitator in a dispute resolution process;
3. An administrator, conservator, guardian, executor, personal representative, trustee or other fiduciary, so long as the **Insured**: (i) is not a beneficiary of such estate, trust or other fiduciary relationship; and (ii) is not receiving compensation other than fees for such services paid directly from such estate or trust or for services in conjunction with such fiduciary capacity;
4. An **Attorney** in researching or certifying title to real estate, including services as a title insurance agent acting on behalf of a title insurance company;
5. A director, officer or member of any professional legal association, legal bar association, or paralegal or legal assistant association, including its governing board or any of its committees;
6. An expert witness solely with respect to subject matters related to the law, the legal profession, or legal procedures, standards or practices;
7. An author or presenter of legal research papers, legal materials and legal seminars, including matters relating to the ethical and professional conduct of an **Attorney**, but only if such services or activities are performed without compensation or royalties, or the amount of compensation or royalties per publication, presentation or seminar does not exceed $30,000;
8. A court-appointed child and family investigator in a domestic relations matter, or other similar position or role so long as the **Insured** is acting pursuant to a court order;
9. A government affairs advisor or lobbyist; and
10. A notary public.

**Professional Services** does _not_ mean <u>nor</u> include any:

11. Services rendered or activities engaged in prior to the **Retroactive Coverage Date**;
12. Obligations or services assumed by or performed under any contract other than one to provide **Professional Services**;
13. Rendering of investment advice in any context or in any capacity including, but not limited to, advice concerning securities, real property, commodities, futures contracts or franchises;
14. Advertising or marketing services or activities; or
15. Services as a broker, dealer, business manager, accountant, or real estate broker or agent.

Z. **Public Relations Event** means the occurrence of any of the following events, but only if and to the extent that the **Named Insured** reasonably believes that such event will have a material adverse effect upon the **Named Insured's** business reputation:

1. The sudden and unexpected death or permanent disability of an **Insured Attorney** who is a partner, shareholder, member or other owner of the **Named Insured**;
2. Indictment or charge of a felony criminal offense against an **Insured Attorney** who is a partner, shareholder, member or other owner of the **Named Insured**; and
3. An act or incident of violence within the **Named Insured's** business offices.

AA. **Public Relations Expenses** means the reasonable fees, costs and expenses incurred by the **Named Insured** for consulting and counseling services rendered by a public relations firm to the **Named Insured** in direct response to a **Public Relations Event**.

BB. **Related Professional Services** means **Professional Services** that are connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision including, but not necessarily limited to, work that is part of the same or continuing **Professional Services**.

CC. **Retroactive Coverage Date** means the date for the **Named Insured** as listed in Item 2 of the **Declarations** and, if applicable, the date for any **Predecessor Law Firm** as listed in an additional **Insured** endorsement issued by the **Company** and identified in Item 8 of the **Declarations**. The effect of the **Retroactive Coverage Date** is described in Section 1.A.1. and Section 5.

DD. **Wrongful Act** means an actual or alleged:

1. Act, error or omission in **Professional Services** that were or should have been rendered by the **Insured**; and
2. A **Personal Injury** resulting from the **Professional Services** of the **Insured**.

## SECTION 3 – EXCLUSIONS

THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** ARISING FROM OR IN CONNECTION WITH:

A. Any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission committed by, at the direction of, or with the consent of an **Insured**, or any **Personal Injury** arising from or in connection with such conduct, subject to Section 6.A. ("innocent insured coverage");

B. Any trust or estate of which an **Insured** is an heir, devisee, beneficiary or distributee of such trust or estate;

C. Any **Professional Services** that were rendered or should have been rendered to or in connection with any **Organization** (including the ownership, maintenance or care of any property in connection with any such **Organization**) of which, at the time such **Professional Services** were or should have been rendered:

1. An **Insured** was an officer, director, employee or other fiduciary;
2. An **Insured** was a partner, shareholder, member or other owner; provided, however, that this provision does not apply if, at the time such **Professional Services** were or should have been rendered, no **Insured** (or group of **Insureds** collectively) owned, possessed or controlled a total voting interest or beneficial interest of more than fifteen percent (15%) of such **Organization**; or
3. An **Insured** served in any capacity to directly or indirectly control, operate or manage such **Organization**.

This exclusion shall not apply to any **Claim** arising from or in connection with (i) an **Insured's** position as an officer or director of an **Exempt Organization**, but only to the extent the **Insured** is not indemnified by the **Exempt Organization**, and only to the extent no other insurance applies, or (ii) any **Professional Services** that were or should have been rendered to an **Organization** listed on an endorsement identified in Item 8 of the **Declarations**;

D. Notary certification without the physical appearance of the person who is or claims to be, or who is otherwise represented to be the person signing said instrument;

E. Any **Wrongful Act** that occurred prior to the **Effective Date** of this **Policy**, if:

1. The **Wrongful Act** occurred in the course of services or activities performed for a firm other than the **Named Insured**, and there is another policy of professional liability insurance that provides coverage for the **Claim**, regardless of the amount, if any, of the available limits of liability of the other policy, and regardless of whether or not the deductible provisions or limits of liability of the other policy are different from those of this **Policy**;
2. There is an earlier-incepting policy of professional liability insurance that provides coverage for the **Claim**, or would have provided coverage for the **Claim** if the **Insured's** obligations under that policy had been complied with, regardless of the amount, if any, of the available limits of liability of the prior policy, and regardless of whether or not the deductible provisions or limits of liability of the prior policy are different from those of this **Policy**; or
3. Prior to the **Effective Date** of this **Policy**, any **Insured** gave or should have given to any insurer, notice of a **Claim** or potential **Claim** arising from or in connection with the **Wrongful Act**, or from any **Wrongful Act** that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the **Claim** or potential **Claim**.

F. An **Insured's** activities as an elected public official, employee or representative of a governmental body, subdivision, or agency thereof ("public entity"), unless such **Insured** is deemed to be a public official, employee or representative solely by reason of rendering **Professional Services** to such public entity;

G. An **Insured's** activities or capacity as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or any regulation or order issued pursuant thereto, or under any other similar state or local law;

H. Any conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an **Insured** in any capacity or under any authority, including any loss or reduction in value of such funds or property;

I. Any dispute over fees or costs, or any **Claim** that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an **Insured**;

J. Any defect in title to real estate that was not disclosed in public records and that any **Insured** knew about when a title insurance policy was issued;

K. Breach of any underwriting authority granted any **Insured** by a title insurance company or its authorized representative;

L. Any liability agreed to or assumed by an **Insured** under an agreement where the **Insured** has agreed to indemnify for or share or participate in any loss payment or expense due or payable under a title insurance policy;

M Any **Claim** that is otherwise covered under any other insurance policy that the **Company** has issued to the **Named Insured** or **Predecessor Law Firm**;

N. Any act, error or omission or **Personal Injury** committed by any **Attorney** with whom any **Insured** shares common office space or office facilities, but which said **Attorney** is not identified as an **Insured Attorney** in Item 3 of the Declarations.

THIS **POLICY** DOES NOT APPLY TO ANY **CLAIM** MADE BY:

O. An employer against an **Insured** who is or was an employee of the employer;

P. An **Insured**;

Q. A family member or other relative of an **Insured**; provided however, that this exclusion shall not apply to a **Claim** arising from or in connection with an **Insured's** having provided **Professional Services** to any such family member or relative in the ordinary course of the **Insured's** practice, for which a fee for **Professional Services** was charged and collected by the **Named Insured**; or

R. Anyone who is or was a partner, officer, director, owner, stockholder or employee of any **Insured**; provided however, that this exclusion shall not apply to a **Claim** arising from or in connection with an **Insured's** having provided **Professional Services** to any such person in the ordinary course of the **Insured's** practice, for which a fee for **Professional Services** was charged and collected by the **Named Insured**.

## SECTION 4 – DEDUCTIBLE, CLAIM EXPENSE ALLOWANCE, LIMIT OF LIABILITY, AND MULTIPLE CLAIMS

A. DEDUCTIBLE

1. For each and every **Claim** covered by this **Policy**, the **Named Insured** shall pay all **Claim Expenses** and **Damages** up to the **Deductible** for each and every covered **Claim**. The **Named Insured's** payment of all **Claim Expenses** and **Damages** up to the **Deductible** for each and every covered **Claim** is a condition precedent to the **Company's** obligation to pay any **Claim Expenses** or **Damages** for each and every covered **Claim**. Each **Insured** shall be jointly and severally liable for such **Claim Expenses** and **Damages** in the event the **Named Insured** fails to make any required payment.

2. The **Company** shall not have any obligation to pay **Claim Expenses** or **Damages** until after the **Deductible** is exhausted. If the **Company** pays any amount within the **Deductible**, the **Named Insured** and each **Insured** shall be jointly and severally liable to the **Company** for any and all such amounts paid by the **Company** and, on demand, shall promptly reimburse such amounts to the **Company**.

3. The maximum aggregate **Deductible** amount payable by the **Named Insured** for all **Claims** first made and reported during a **Policy Period**, without regard to the number of **Claims** or claimants, or the number of **Insureds**, shall be twice the "Each **Claim**" **Deductible** amount listed in Item 6 of the **Declarations**.

4. If an **Insured** delivered an **Engagement Letter** to the client(s) prior to rendering any **Professional Services** that are the subject of the **Wrongful Act**, the **Deductible** payable by the **Named Insured** for that **Claim** will be reduced, subject to Section 4.A.6., by an amount equal to the lesser of: (i) fifty percent (50%) of the **Deductible**; or (ii) $25,000. For purposes of this Section 4.A.4., the term "Engagement Letter" means a written communication from the Insured that:

   (a) Specifies the nature and scope of the **Professional Services** to be performed by the **Insured**;

   (b) Identifies all clients for whom the **Insured** has agreed to perform all such **Professional Services**;

   (c) Specifies the rate or basis for determining the amount of the fee and expenses for which the client will be responsible; and

   (d) Is signed by all clients identified in the Engagement Letter no later than 30 days following the date upon which the **Insured** commences to render the **Professional Services** that are the subject of the Engagement Letter.

5. If a **Claim** is resolved through **Formal Mediation**, the **Deductible** payable by the **Named Insured** for that **Claim** will be reduced, subject to Section 4.A.6., by an amount equal to the lesser of: (i) fifty percent (50%) of the **Deductible**; or (ii) $25,000.

6. If the **Deductible** is subject to reduction under both Section 4.A.4. and Section 4.A.5, the maximum amount the **Deductible** shall be reduced is limited to the lesser of: (i) fifty percent (50%) of the **Deductible**; or (ii) $25,000, without regard to the application of both Section 4.A.4. and Section 4.A.5.

B. CLAIM EXPENSE ALLOWANCE

1. This **Policy** provides a **Claim Expense Allowance**. The **Company**'s payment of any **Claim Expenses** will first be applied against and reduce the **Claim Expense Allowance**. Subject to Section 4.B.2., the **Claim Expense Allowance** shall be the maximum aggregate amount the **Company** shall be obligated to pay for **Claim Expenses** for all **Claims** first made and reported during a **Policy Period**, without regard to the number of **Claims** or claimants, or the number of **Insureds**.

2. In the event payment by the **Named Insured** or the **Company** (or both) of **Claim Expenses** exhausts the remaining available **Claim Expense Allowance** under this **Policy**, any further payment of **Claim Expenses** shall be applied against and reduce the remaining available **Limit of Liability**, described in Section 4.C. The **Company** shall have no further obligation to pay **Claim Expenses** once any **Limit of Liability** is reached.

3. The **Claim Expense Allowance** includes the **Deductible**, and to the extent any **Insured** is required during the **Policy Period** to pay **Claim Expenses** as part of a **Deductible**, the remaining available **Claim Expense Allowance** for the **Policy Period** shall be reduced by the amount of such payments by the **Insured**.

4. If the **Company** issues an **Extended Reporting Period Endorsement**, the **Claim Expense Allowance** applicable during the **Extended Reporting Period** is described in Section 5.J.

C. LIMIT OF LIABILITY

1. Subject to Section 4.B.2. and subject always to the remaining available "Aggregate" **Limit of Liability** in the event more than one **Claim** is first made and first reported during the **Policy Period**, the "Each **Claim**" **Limit of Liability** listed in Item 5 of the **Declarations** shall be the maximum amount the **Company** shall pay for each **Claim** first made and first reported during a **Policy Period**, without regard to the number of claimants or the number of **Insureds**. The **Limit of Liability** includes the **Deductible**, and to the extent any **Insured** is required during the **Policy Period** to pay **Damages** as part of a **Deductible**, the remaining available **Limit of Liability** for the **Claim** shall be reduced by the amount of such payments by the **Insured**.

2. The "Aggregate" **Limit of Liability** listed in Item 5 of the **Declarations** shall be the maximum amount the **Company** shall pay for all **Claims** first made and first reported during a **Policy Period**, without regard to the number of **Claims** or claimants, or the number of **Insureds**.

3. If the **Company** issues an **Extended Reporting Period Endorsement**, the **Limit of Liability** applicable during the **Extended Reporting Period** is described in Section 5.J.

4. If the **Company** pays any amount in excess of the applicable **Limit of Liability**, or any other amount for which the **Company** has no obligation under this **Policy**, each **Insured** shall be jointly and severally liable to the **Company** for any and all such amounts and, on demand, shall promptly reimburse such amounts to the **Company**.

D. MULTIPLE CLAIMS, CLAIMANTS, OR INSUREDS

Neither the making of one or more **Claims** against more than one **Insured**, nor the making of **Claims** by more than one claimant, shall operate to increase the Limit of Liability. All **Claims** that arise out of or in connection with the same **Professional Services** or **Related Professional Services**, whenever made and without regard to the number of **Claims**, claimants, or implicated **Insureds**, shall be treated as a single **Claim**. All such **Claims**, whenever made, shall be deemed first made at the time the earliest **Claim** arising out of such **Professional Services** or **Related Professional Services** was first made, and all such **Claims** shall be subject to the same "Each Claim" **Limit of Liability**, "Aggregate" **Limit of Liability**, and **Claim Expense Allowance**.

E. NON-CUMULATION OF LIMITS OF LIABILITY

If two or more policies of lawyers professional liability insurance issued by the **Company** would otherwise provide coverage to an **Insured** or multiple **Insureds** with respect to any **Claim**, the **Claim** shall be subject to, and the maximum amount the **Company** shall be obligated to pay is, the highest available **Limit of Liability** of one of such policies. The **Limit of Liability** under this **Policy** shall be reduced, and may be exhausted, by payments under this **Policy** or payments under such other policies issued by the **Company**.

## SECTION 5 – EXTENDED REPORTING PERIOD

A. AUTOMATIC 60-DAY EXTENDED REPORTING PERIOD

1. If this **Policy** is cancelled or not renewed by the **Company** or **Named Insured** for any reason other than nonpayment of premium or **Deductible**, or for fraud or material misrepresentation in any application for lawyers professional liability insurance delivered to the **Company**, then the **Named Insured** shall have an automatic 60-day period to report a **Claim**, commencing immediately upon expiration or cancellation of the **Policy Period**, subject to the terms and conditions of Section 5.J. and Section 5.K.

2. The automatic 60-day reporting period under this Section 5.A. shall immediately terminate if: (i) the **Company** issues an **Extended Reporting Period Endorsement** to the **Named Insured** at any time during such 60-day period; or (ii) the **Named Insured** binds coverage or otherwise becomes insured under another policy of lawyers professional liability insurance issued by any insurer.

B. FREE EXTENDED REPORTING PERIOD FOR RETIRING SOLE PRACTITIONER

This Section 5.B. shall apply to any **Extended Reporting Period Endorsement** issued to an individual **Attorney** who is the only **Attorney** identified in Item 3 of the **Declarations**.

1. An **Attorney** practicing as a sole practitioner shall have the right, upon written request to the **Company** no later than thirty (30) days after expiration or cancellation of the **Policy Period**, to have the **Company** issue an **Extended Reporting Period Endorsement** of unlimited duration to the **Attorney** if the **Attorney** satisfies the following conditions:

   (a) The **Attorney** is identified in Item 3 of the **Declarations** and has been the only **Attorney** identified in Item 3 of the **Declarations** and the only **Attorney** continuously insured by the **Company** under this **Policy** or a predecessor to this **Policy** during the five-year period immediately preceding expiration or cancellation of the **Policy Period**; and

(b) The **Attorney** has attained age 55 or older and retires from and permanently and completely ceases the practice of law and the rendering of **Professional Services** during the **Policy Period.**

2. No additional premium will be charged if the **Company** issues an **Extended Reporting Period Endorsement** to the sole practitioner **Attorney** pursuant to Section 5.B.1.

3. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.B.1., the **Company's Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

4. Any **Extended Reporting Period Endorsement** issued under this Section 5.B. shall be subject to the terms and conditions of Section 5.K.

C. FREE EXTENDED REPORTING PERIOD FOR ATTORNEY RETIRING FROM NAMED INSURED FIRM

This Section 5.C. shall apply to any **Extended Reporting Period Endorsement** issued to an individual **Attorney** if the **Named Insured** has more than one (1) **Attorney** identified in Item 3 of the **Declarations.**

1. An **Attorney** shall have the right, upon written request to the **Company** no later than thirty (30) days after expiration or cancellation of the **Policy Period,** to have the **Company** issue an **Extended Reporting Period Endorsement** of unlimited duration if the **Attorney** satisfies the following conditions:

(a) The **Attorney** is identified in Item 3 of the **Declarations** and has been identified in Item 3 of the **Declarations** and continuously insured by the **Company** under this **Policy** and each predecessor policy to this **Policy** during the five-year period immediately preceding expiration or cancellation of the **Policy Period**; and

(b) The **Attorney** has attained age 55 or older and retires from and permanently and completely ceases the practice of law and the rendering of **Professional Services** during the **Policy Period.**

2. No additional premium will be charged if the **Company** issues an **Extended Reporting Period Endorsement** to an **Attorney** pursuant to Section 5.C.1.

3. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.C.1., the **Company's Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

4. Any **Extended Reporting Period Endorsement** issued pursuant to Section 5.C.1. shall be subject to the terms and conditions of Section 5.K.

D. FREE EXTENDED REPORTING PERIOD UPON DEATH

1. If an **Attorney** identified in Item 3 of the **Declarations** dies during the **Policy Period,** the executor, personal representative or other duly authorized administrator of the **Attorney's** estate shall have the right to request that the **Company** issue an **Extended Reporting Period Endorsement** to the **Attorney's** estate, subject to satisfaction of all of the following terms and conditions:

(a) The executor, personal representative or other duly authorized administrator of the **Attorney's** estate shall deliver to the **Company** no later than thirty (30) days following expiration of the **Policy Period** or any applicable **Extended Reporting Period:** (i) a written request that the **Company** issue an **Extended Reporting Period Endorsement**; and (ii) written proof of the date and cause of death of the **Attorney;**

(b) No **Extended Reporting Period Endorsement** shall be available if suicide or abuse or misuse of any substance is the cause of the **Attorney's** death; and

(c) The **Extended Reporting Period Endorsement** issued to the **Attorney's** estate shall terminate upon the later of: (i) the informal or formal closing of the **Attorney's** estate; or (ii) that date which is three (3) years following the date of death of the **Attorney.**

2. No additional premium will be charged if the **Company** issues an **Extended Reporting Period Endorsement** to an **Attorney** pursuant to this Section 5.D.1.

3. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.D.1., the **Company's Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

4. Any **Extended Reporting Period Endorsement** issued pursuant to Section 5.D.1. shall be subject to the terms and conditions of Section 5.K.

E. FREE EXTENDED REPORTING PERIOD UPON TOTAL AND PERMANENT DISABILITY

1. If an **Attorney** identified in Item 3 of the **Declarations** becomes totally and permanently disabled during the **Policy Period**, then the **Attorney** or the legal guardian acting on behalf of the **Attorney** shall have the right to request that the **Company** issue an **Extended Reporting Period Endorsement** of unlimited duration, subject to satisfaction of all of the following terms and conditions:

   (a) The **Attorney** or such legal guardian shall deliver to the **Company** no later than thirty (30) days following expiration of the **Policy Period**: (i) a written request that the **Company** issue an **Extended Reporting Period Endorsement**; and (ii) a written certification from a licensed physician stating that the **Attorney** is totally and permanently disabled;

   (b) No **Extended Reporting Period Endorsement** shall be available if the **Attorney** is totally and permanently disabled arising from or in connection with abuse or misuse of any substance;

   (c) If the **Company** issues an **Extended Reporting Period Endorsement** to an **Attorney** who is totally and permanently disabled, the **Extended Reporting Period** shall immediately terminate if the **Attorney** begins to render any **Professional Services** at any time after the **Company** issues the **Extended Reporting Period Endorsement**; and

   (d) Upon the **Company**'s request and at the **Company**'s sole expense, the **Attorney** must agree to submit to a medical examination by a licensed physician designated by the **Company**.

2. Solely for purposes of this Section 5.E., including the written certification from a licensed physician as required under Section 5.E.1.(a), the phrase "totally and permanently disabled" shall mean:

   (a) Due to **Bodily Injury**, other than death, the **Attorney** is wholly and entirely prevented from rendering any **Professional Services**;

   (b) Such **Bodily Injury** has existed for no less than six (6) months prior to expiration of the **Policy Period**; and

   (c) Such **Bodily Injury** is reasonably expected to be continuous and permanent.

3. No additional premium will be charged if the **Company** issues an **Extended Reporting Period Endorsement** to an **Attorney** pursuant to Section 5.E.1.

4. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.E.1., the **Company**'s **Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

5. Any **Extended Reporting Period Endorsement** issued pursuant to Section 5.E.1. shall be subject to the terms and conditions of Section 5.K.

F. FREE EXTENDED REPORTING PERIOD UPON ACTIVE MILITARY SERVICE

1. If an **Attorney** listed in Item 3 of the **Declarations** is called to active duty as a member of the United States armed forces, then the **Attorney** shall have the right to request that the **Company** issue an **Extended Reporting Period Endorsement** of unlimited duration to the **Attorney**. The **Attorney** shall deliver to the **Company** no later than thirty (30) days after being called to active duty: (i) a written request for issuance of an **Extended Reporting Period Endorsement**; and (ii) written proof demonstrating that the **Attorney** has been called to active duty.

2. No additional premium will be charged if the **Company** issues an **Extended Reporting Period Endorsement** to an **Attorney** pursuant to this Section 5.F.1.

3. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.F.1., the **Company**'s **Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

4. Any **Extended Reporting Period Endorsement** issued pursuant to Section 5.F.1. shall be subject to the terms and conditions of Section 5.K.

G. OPTIONAL EXTENDED REPORTING PERIOD FOR INDIVIDUAL ATTORNEY

1. An **Attorney** who has *not* been continuously insured by the **Company** under this **Policy** and each predecessor policy to this **Policy** during the five-year period immediately preceding expiration or cancellation of the **Policy Period** shall have the right, upon written request to the **Company** and upon payment of the additional premium specified in Section 5.I. no later than thirty (30) days after expiration or cancellation of the **Policy Period**, to have the **Company** issue an **Extended Reporting Period Endorsement** to the **Attorney** if the **Attorney** satisfies the following conditions:

   (a) The **Attorney** is identified in Item 3 of the **Declarations**; and

   (b) The **Attorney** has attained age 55 or older and retires from and permanently and completely ceases the practice of law and the rendering of **Professional Services** during the **Policy Period**.

2. If an **Attorney** identified in Item 3 of the **Declarations** ceases to be a principal, partner, shareholder or other owner or employee of the **Named Insured** during the **Policy Period**, and continues to render **Professional Services** but not on behalf of the **Named Insured**, then the **Attorney** shall have the right, upon written request to the **Company** and upon payment of the additional premium specified in Section 5.I. no later than thirty (30) days after ceasing to be a principal, partner, shareholder or other owner or employee of the **Named Insured**, to have the **Company** issue an **Extended Reporting Period Endorsement**.

3. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.G.1. or Section 5.G.2., the **Company's Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

4. Any **Extended Reporting Period Endorsement** issued pursuant to Section 5.G.1. or Section 5.G.2 shall be subject to the terms and conditions of Section 5.K.

H. OPTIONAL EXTENDED REPORTING PERIOD FOR NAMED INSURED

1. If this **Policy** is cancelled or not renewed by the **Company** or **Named Insured** for any reason other than nonpayment of premium or **Deductible** or fraud or material misrepresentation in any application for lawyers professional liability insurance delivered to the **Company**, and except as otherwise provided herein, the **Named Insured** shall have the right, upon written request to the **Company** and upon payment of the additional premium specified in Section 5.I. no later than thirty (30) days after expiration or cancellation of the **Policy Period**, to have the **Company** issue an **Extended Reporting Period Endorsement** of a duration as set forth in Section 5.I.1.

2. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to this Section 5.H., the **Company's Limit of Liability** during the **Extended Reporting Period** shall be as stated in Section 5.J.

3. Any **Extended Reporting Period Endorsement** issued under this Section 5.H. shall be subject to the terms and conditions of Section 5.K.

I. PREMIUM FOR EXTENDED REPORTING PERIOD ENDORSEMENT

1. If the **Company** issues an **Extended Reporting Period Endorsement** to the **Named Insured** pursuant to Section 5.H.1., the premium for any **Extended Reporting Period Endorsement** shall be calculated based upon a percentage of the expiring premium of this **Policy** as applied to the duration of the **Extended Reporting Period** as follows:

| Duration of **Extended Reporting Period** | Percentage of Expiring Premium |
|---|---|
| 1 Year | 125% |
| 2 Years | 175% |
| 3 Years | 200% |
| 5 Years | 265% |
| Unlimited | 300% |

2. If the **Company** issues an **Extended Reporting Period Endorsement** to an individual **Attorney** pursuant to Section 5.G.1 or Section 5.G.2., the premium for any **Extended Reporting Period Endorsement** shall be calculated based upon the **Attorney's** portion of the expiring premium of this **Policy** multiplied by the percentage applicable to an unlimited **Extended Reporting Period Endorsement** as set forth in Section 5.I.1.

3. Except as stated in Section 5.G.2., the premium for any **Extended Reporting Period Endorsement** must be paid no later than thirty (30) days after expiration or cancellation of the **Policy Period**. If the **Company** issues an **Extended Reporting Period Endorsement** pursuant to Section 5.G.2., the premium for the **Extended Reporting Period Endorsement** must be paid no later than thirty (30) days after the individual **Attorney** ceases to be a principal, partner, shareholder or other owner or employee of the **Named Insured**.

J. LIMIT OF LIABILITY AND CLAIM EXPENSE ALLOWANCE DURING EXTENDED REPORTING PERIOD

1. If the **Company** issues an **Extended Reporting Period Endorsement** to a sole practitioner **Attorney** pursuant to Section 5.B.1. or to the **Named Insured** pursuant to Section 5.H., the **Extended Reporting Period Endorsement** does *not* create or establish a new or separate **Policy, Limit of Liability** or **Claim Expense Allowance** and will not increase or reinstate the **Limit of Liability** or the **Claim Expense Allowance** under this **Policy**. Instead, the maximum amount the **Company** shall pay as **Claim Expenses** and **Damages** for all **Claims** first made and first reported to the **Company** during the **Extended Reporting Period** shall be the remaining **Limit of Liability** and the remaining **Claim Expense Allowance** under this **Policy** at the time of expiration or cancellation of the **Policy Period**.

2. Subject to the further limitation set forth in Section 5.J.4, if the **Company** issues an **Extended Reporting Period Endorsement** to an individual **Attorney** pursuant to Section 5.C., Section 5.D., Section 5.E., Section 5.F., or Section 5.G., the maximum amount the **Company** shall pay as **Claim Expenses** for all **Claims** first made against the **Attorney** and first reported to the **Company** during the **Extended Reporting Period** shall be the *lesser* of:

   (a) The remaining **Claim Expense Allowance** under this **Policy** at the time of expiration or cancellation of the **Policy Period**; or

   (b) $250,000.

   The amount of such **Claim Expense Allowance** shall be determined without regard to the number of **Claims** or claimants.

3. Subject to the further limitation set forth in Section 5.J.4., if the **Company** issues an **Extended Reporting Period Endorsement** to an individual **Attorney** pursuant to Section 5.C., Section 5.D., Section 5.E., Section 5.F., or Section 5.G., the maximum amount the **Company** shall pay as **Damages** for all **Claims** first made against the **Attorney** and first reported to the **Company** during the **Extended Reporting Period** shall be the *lesser* of:

   (a) The remaining **Limit of Liability** under this **Policy** at the time of expiration or cancellation of the **Policy Period**; or

   (b) $1,000,000.

   The maximum amount the **Company** shall pay as **Damages** during the **Extended Reporting Period** shall be determined without regard to the number of **Claims** or claimants.

4. If the **Company** has issued an **Extended Reporting Period Endorsement** to more than one former **Attorney** of the **Named Insured**, the "Each **Claim**" **Limit of Liability** listed in Item 5 of the **Declarations** shall be the maximum amount the **Company** shall pay for all **Claims** first made and first reported during any **Extended Reporting Period**, without regard to the number of **Claims** or claimants, or the number of **Attorneys** to whom the Company has issued an **Extended Reporting Period Endorsement**.

K. TERMS AND CONDITIONS OF EXTENDED REPORTING PERIOD ENDORSEMENT

1. If the **Company** issues any **Extended Reporting Period Endorsement** to an individual **Attorney** pursuant to Section 5.C., Section 5.D., Section 5.E., Section 5.F., or Section 5.G., the **Extended Reporting Period** shall become effective and shall commence only upon the latest to occur of the following:

   (a) The date the **Named Insured** no longer has available any other insurance that provides coverage to the **Attorney** for any **Claim** first made and first reported to the **Company** after the **Company** has issued the **Extended Reporting Period Endorsement**;

   (b) Expiration or cancellation of the **Policy Period**;

   (c) Expiration or cancellation of any renewal or successive renewal of this **Policy**; and

(d) Expiration or cancellation of any **Extended Reporting Period Endorsement** issued to the **Named Insured.**

2. Any **Extended Reporting Period** and **Extended Reporting Period Endorsement** provided under Section 5 simply extends the reporting period to first report a **Claim** to the **Company** under this **Policy** that:

(a) Is otherwise covered by this **Policy;**

(b) Arises from a **Wrongful Act** that occurred after the **Retroactive Coverage Date** and before the end of the **Policy Period;** and

(c) Is first made, and first reported to the **Company,** after the end of the **Policy Period** and during the **Extended Reporting Period.**

3. Any **Claim** reported to the **Company** during the **Extended Reporting Period** shall be treated as if reported during the **Policy Period.**

4. Immediately upon issuance of an **Extended Reporting Period Endorsement,** any premium paid for the **Extended Reporting Period Endorsement** shall be non-refundable and the **Extended Reporting Period Endorsement** shall not be cancellable, except as provided in Section 5.K.5.

5. No **Extended Reporting Period Endorsement** under this Section 5, nor any continuation thereof, shall be available to an **Attorney** or the **Named Insured,** and if issued shall be deemed automatically cancelled, if:

(a) The **Company** cancels this **Policy** or any other policy for failure to pay the premiums when due or for failure to pay any **Deductible** or other amount due to the **Company;**

(b) The **Company** cancels or rescinds this **Policy** or any other policy for fraud or misrepresentation in any application or other submission to the **Company;**

(c) Any **Insured** fails to comply with the terms and conditions of this **Policy** or any other policy, including any **Extended Reporting Period Endorsement** or any other endorsements; or

(d) Any **Insured's** license or right to practice law has been revoked, suspended, or surrendered after the commencement of any investigation or disciplinary proceeding by any regulatory authority.

6. If the **Company** issues any **Extended Reporting Period Endorsement** under Section 5, it is understood that any such **Extended Reporting Period Endorsement** is not a new insurance policy, but instead an endorsement that simply extends the time period during which to report a **Claim** under this **Policy.** All other terms and conditions of this **Policy** shall apply to any **Extended Reporting Period** and any **Extended Reporting Period Endorsement.**

## SECTION 6 – GENERAL CONDITIONS

A. INNOCENT INSURED COVERAGE

1. Whenever a **Claim** otherwise covered by this **Policy** would be excluded based solely upon Section 3.A. and no other applicable exclusion under this **Policy,** coverage will be afforded to any individual **Insured** who did not personally commit, or personally participate in committing, any such act, error or omission, or in causing such **Personal Injury,** and who did not remain passive after learning of the act, error, omission, or **Personal Injury,** provided that each such individual **Insured** shall have immediately notified the **Company** and complied with all obligations under this **Policy** once said **Insured** obtained knowledge of the act, error, omission or **Personal Injury.** Nothing in this section shall be interpreted to afford any coverage to a **Named Insured** that is an entity rather than an individual.

2. No coverage will be afforded to any individual **Insured** under Section 6.A.1. if the **Claim** is otherwise excluded from coverage based upon any applicable exclusion from coverage under this **Policy** other than Section 3.A.

3. The **Company's** obligation to provide coverage or make any payment of **Damages** or **Claim Expenses** under this Section 6.A. shall be in excess of any and all assets of any **Insured** who is not afforded coverage under this Section 6.A.

B. INSURED'S OBLIGATIONS UPON NOTICE OF CLAIM OR POTENTIAL CLAIM

1. When an **Insured** becomes aware of a **Wrongful Act** that could reasonably be expected to be the basis of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to the **Company's** obligation to defend or indemnify the **Insured** under this **Policy**, the **Insured** shall immediately give written notice to the **Company**. Such notice shall include the fullest information obtainable concerning the potential **Claim**. The **Insured** must deliver written notice to the **Company** in accordance with the CLAIMS MADE AND REPORTED POLICY paragraph set forth on page 1 of this **Policy**.

2. If, during the **Policy Period** or any **Extended Reporting Period**, the **Company** is given written notice of a potential **Claim** pursuant to Section 6.B.1, and a **Claim** arising from or in connection with the same **Wrongful Act** is subsequently made against an **Insured** no later than six years after the end of the **Insured's** last **Policy Period** or any applicable **Extended Reporting Period**, then any such **Claim** shall be deemed to have been first reported during the **Policy Period** or **Extended Reporting Period** in which the potential **Claim** was reported.

3. When a **Claim** is made against an **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative. The **Company** shall have no obligation hereunder with respect to a **Claim** unless and until so notified.

4. In the event an **Insured** fails to give written notice to the **Company** of a **Claim**, prior to the end of the **Policy Period** in which the **Claim** is made, or in the event an **Insured** fails to give written notice to the **Company** of a potential **Claim**, as described in Section 6.B.1, prior to the end of the **Policy Period** in which the **Insured** first becomes aware of the act, error, omission, or **Personal Injury**, then no coverage for any such **Claim** shall be afforded to the **Insured** under any future policy issued by the **Company**.

C. ASSISTANCE AND COOPERATION OF THE INSURED

1. Each **Insured** shall cooperate with the **Company** in its investigation of any **Claim**, including, without limitation, by promptly complying with all requests for any **Insured** to submit to or provide any statements, including any sworn statements or statements under oath of any **Insured**, reports, documents, or other information, and by providing copies of all pertinent files upon request.

2. Each **Insured** shall cooperate and assist, as requested, in the defense of any **Claim**, in making any settlements, and in enforcing any right of contribution or indemnity against any person. If requested by the **Company**, such assistance may include, without limitation, attendance at hearings and trials and assistance in securing and giving evidence and in obtaining the attendance of witnesses. Neither the **Insured** nor the **Insured's** legal representative shall impede the **Company's** investigation or defense of any **Claim**.

3. Each **Insured** shall notify the **Company** of any demand to arbitrate a **Claim** against an **Insured**, and any right to demand arbitration of a **Claim**, and in the event the **Company** elects to proceed with arbitration, shall cooperate in any such proceeding.

4. No **Insured** shall, without the **Company's** prior written consent, engage in or offer to engage in any of the following with respect to any **Claim** or potential **Claim**: (a) make any payments; (b) admit any liability; (c) stipulate to the entry of a judgment against the **Insured**; (d) settle any **Claim**; (e) assume any obligation; (f) negotiate any tolling agreement; or (g) incur any expense. If an **Insured** engages in or offers to engage in any of the foregoing, the **Insured** shall do so at the **Insured's** own liability and expense, and such engagement, action or offer by the **Insured** shall be deemed to be a breach of the **Insured's** duty to cooperate with the **Company** with respect to such **Claim** or potential **Claim**.

D. ACTION AGAINST COMPANY

No action shall lie against the **Company** unless and until the **Insured** has fully complied with all terms and conditions of this **Policy**, and unless and until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Company**. No person or **Organization** shall have the right under this **Policy** to join the **Company** as a party to any **Claim** against an **Insured**.

E. OTHER INSURANCE

Except where coverage under this **Policy** is excluded under Section 3.E., the insurance provided under this **Policy** shall be excess over any other valid and collectible insurance, whether such insurance is stated to be primary, contributory,

excess, contingent or otherwise, unless such other insurance is specifically written only as excess insurance over this **Policy**.

F. SUBROGATION

1. In the event of any payment under this **Policy**, the **Company** shall be subrogated to all the **Insured's** rights of recovery against any person or organization. The **Insured** shall execute and deliver such instruments and papers as may be required by the **Company**, and shall do whatever else is necessary, to secure such rights. The **Insured** shall at no time do anything to prejudice such rights.

2. The **Company** shall not exercise any subrogation rights against another **Insured**, except with respect to any **Claim** arising from, involving, or in connection with any dishonest, fraudulent, criminal, malicious, or intentionally wrongful or harmful act, error or omission of, or **Personal Injury** caused by, such **Insured**.

3. Any amounts recovered through subrogation shall be apportioned as follows: First, to the repayment of expenses incurred in enforcing subrogation; Second, to repayment of any loss and expense payments by the **Insured** in excess of any **Deductible**; Third, to any loss and expense payments by an excess carrier on behalf of the **Insured**; Fourth, to any loss and expense payments by any primary carrier, including the **Company**, on behalf of the **Insured**; and Last, to repayment of the **Insured's Deductible**.

G. CHANGES IN POLICY TERMS

Except where otherwise provided herein, no part of this **Policy** may be waived or changed, except by written endorsement issued to form a part of this **Policy**, and signed by an authorized representative of the **Company**. Neither notice to an agent nor knowledge possessed by an agent or by any other person shall effect any waiver or change in any part of this **Policy** or estop the **Company** from asserting any right under this **Policy**.

H. FIRM CHANGES

1. The **Named Insured** shall immediately notify the **Company** if, during the **Policy Period**, the **Named Insured** has: (a) any increase or decrease by more than 25 **Attorneys** or by more than 50% in the total number of **Attorneys** listed in Item 3 of the **Declarations**; or (b) any acquisition, dissolution or merger by or of the **Named Insured**. Upon receipt of such notice, the **Company** reserves the right, in its sole discretion, to re-evaluate the risk insured under this **Policy** and to take appropriate underwriting action.

2. In all instances other than those described in the immediately preceding section, the **Named Insured** shall notify the **Company** within a commercially reasonable period of time if, during the **Policy Period**, the **Named Insured** seeks to add or delete an **Attorney** to or from the list of insured **Attorneys** in Item 3 of the **Declarations**. Upon receipt of such notice, the **Company** reserves the right, in its sole discretion, to re-evaluate the risk insured under this **Policy** and to take appropriate underwriting action.

I. ASSIGNMENT

No rights or interests hereunder of any **Insured** may be assigned.

J. CANCELLATION OR NON-RENEWAL

1. The **Named Insured** may cancel this **Policy** at any time by surrendering this **Policy** to the **Company** (or an authorized representative of the **Company**), or by written notice to the **Company** stating the date on which the **Named Insured** proposes that the cancellation will be effective. In the event the **Named Insured** cancels this **Policy**, the **Company** shall be entitled to retain the customary "short rate" portion of the premium.

2. In the event the **Named Insured** has failed to pay when due a premium or **Deductible** under this **Policy**, or any other money owed to the **Company**, the **Company** may cancel this or any other policy by written notice of cancellation to the **Named Insured**. The notice shall state the date on which the cancellation will be effective, which shall be no fewer than ten (10) days following the date of the notice. Such notice shall be effective and conclusive as to all **Insureds** hereunder. Proof of mailing shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end date of the **Policy Period**.

3. For any reason other than nonpayment of premium or **Deductible** as set forth in Section 6.J.2, including but not limited to: (a) material misrepresentation; (b) substantial change in the risk assumed; or (c) substantial breach of contractual duties, conditions, statements or assurances, the **Company** may cancel this **Policy** by written

notice of cancellation to the **Named Insured**. The notice shall state the date on which the cancellation will be effective, which shall be no fewer than forty-five (45) days after the date of the notice. Such notice shall be effective and conclusive as to all **Insureds** hereunder. Proof of mailing is sufficient proof of notice and the effective cancellation date stated in the notice will become the end date of the **Policy Period**.

In the event the **Company** cancels this **Policy** for any reason, it will compute earned premium on a *pro rata* basis. The **Company** may make any resultant premium adjustments at the time cancellation is effective, or as soon thereafter as is practicable. However, the payment or tender of unearned premium is not a condition of or a pre-requisite to cancellation of this **Policy**.

4. The **Company** may decline to renew this **Policy** for any reason. In the event the **Company** declines to renew this **Policy**, the **Company** shall provide the **Named Insured** with no less than sixty (60) days advance notice thereof.

K. STATEMENTS IN DECLARATIONS AND APPLICATION

By acceptance of this **Policy**, each **Insured** agrees with, represents to and assures the **Company** that the statements, information and representations in the **Declarations**, in the application for this **Policy**, and in the applications for each prior policy issued by the **Company** to the **Insured**, are true and correct, that the **Declarations** and the application form a part of this **Policy**, and that this **Policy** is issued in reliance upon the truth of such statements, information and representations.

L. ENTIRE CONTRACT

This **Policy**, including any signed endorsements attaching hereto, and including any current or previously submitted application documents which are incorporated herein by reference, embodies all agreements existing between the **Insured** and the **Company** relating to this insurance.

M. NONASSESSABLE POLICY

This **Policy** is not assessable.

N. SPECIAL LAWS

Any and all provisions of this **Policy** that are in conflict with applicable laws of the jurisdiction wherein this **Policy** is issued are hereby amended to conform to such laws.

O. NOTICES

All notices to be delivered to the **Named Insured** under this **Policy** shall be mailed first class postage to the **Named Insured** at the address shown in Item 1 of the **Declarations**, unless the **Company** is notified in writing of a change in the mailing address of the **Named Insured**. Except for notice of a claim/potential claim, which shall be delivered to the **Company** in accordance with the NOTICE OF CLAIM paragraph set forth on page 1 of this **Policy**, all other notices to be delivered to the **Company** shall be mailed first class postage to the **Company** at the following address:

ALPS<br>111 N. Higgins, Ste. 200<br>P.O. Box 9169<br>Missoula, MT 59807-9169

P. SINGULAR AND PLURAL FORM OF A WORD OR DEFINED TERM

Whenever the singular form of a word or defined term is used herein, the same shall include the plural form of the word or defined term when required by context.

Q. NAMED INSURED REPRESENTS ALL INSUREDS

By acceptance of this **Policy**, the **Named Insured** shall be designated to act on behalf of all **Insureds** for all purposes including, but not limited to, the giving and receiving of all notices, consents, communications and correspondence, the cancellation or non-renewal of this **Policy**, the payment of any premiums and **Deductible** due hereunder and the receipt of any return premiums that may be due under this **Policy**.