IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,

            Plaintiff,

v.                                          CIVIL ACTION NO. 1:19CV132
                                                     (Judge Keeley)

S. SEAN MURPHY, ESQUIRE and
S. SEAN MURPHY, PLLC,

            Defendants.

              MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
                MOTION TO DISMISS [Dkt. No. 10] AND STAYING CASE

     Pending before the Court is a motion by the defendants S. Sean Murphy, Esq. and S. Sean Murphy, PLLC (collectively, "Murphy") to dismiss the complaint filed by the defendant, ALPS Property & Casualty Insurance Company ("ALPS") (Dkt. No. 10). For the following reasons, the Court **DENIES** the motion, and for good cause **STAYS** the case pending further development in the state court action.

                              I. BACKGROUND

     The Court's recitation of the facts is taken from the complaint. As it must, at this early stage of the proceedings, the Court construes those facts in the light most favorable to the non-moving party, ALPS. See <u>De'Ionta v. Johnson</u>, 708 F.3d 520, 524 (4th Cir. 2013).

     On July 1, 2019, ALPS filed a complaint against Murphy seeking a declaratory judgment that its insurance policy does not afford

coverage to Murphy with respect to a potential claim. In addition, ALPS seeks a declaration that it has no duty to defend or indemnify Murphy under the policy with respect to a potential claim (Dkt. No. 1).

**A.   The Wire Transaction**

This dispute arises from Murphy's representation of Betty Parmer ("Parmer") in a collection action involving United Bank, Inc. ("United Bank"), styled United Bank, Inc. v. Parmer, Civil Action No. 17-C-210 (Cir. Ct. Monongalia Cty., W. Va.) ("the United Bank case") (Dkt. No. 1 at 2). On April 4, 2019, Parmer and United Bank settled their dispute, with Parmer agreeing to pay United Bank a confidential settlement amount. Id.

On April 11, 2019, at 7:06 A.M., based on custom and practice of counsel in the state case, Murphy requested wire instructions via email for the settlement payment from counsel for United Bank, Sean P. George ("George"). Id. At 9:39 A.M. the same day, George responded to Murphy's email, stating "Will request them and forward on receipt." Id. at 3. At 2:41 P.M. the same day, a person or persons posing as George provided Murphy with wire instructions indicating that the payment should be transferred to Chase Bank. Id.

Murphy provided the Chase Bank instructions to Parmer's bank, Fulton Bank in Harrisburg, Pennsylvania. Id. On April 15, 2019, Fulton Bank, on behalf of Parmer, wired the settlement payment according to the wire instructions provided by Murphy. Id. Thereafter, on May 3, 2019, George informed Murphy that United Bank had never received the payment. Id. The settlement payment was not recovered, and the loss was reported to Fulton Bank, Chase Bank, and the Federal Bureau of Investigation. Id. at 4.

On May 23, 2019, George asserted that the wire instructions sent by Murphy to Fulton Bank were incorrect, stating he had not provided Murphy with "bogus instructions" and alleging that "Ms. Parmer's bank and [Murphy] had a duty to verify the instructions as accurate before acting upon them." Id. That same day, George demanded that Murphy contact law enforcement and participate in a status conference in the United Bank suit. Id.

**B.   The Insurance Policy**

ALPS issued Lawyers Professional Liability Insurance Policy No. APLS15426-7 to the Murphy Law Firm for the policy period August 31, 2018 to August 31, 2019. Id. The policy provides coverage on a claims made and reported basis. Id. at 5. Under the policy, a "claim" is defined as "a demand for money or services including, but not necessarily limited to, the service of suit or institution

3

of arbitration or alternative dispute resolution proceedings against the Insured[.]" Id. at 6. A claim does not mean nor does it include any demand, service or proceeding arising from or in connection with any actual or alleged:

> 4. Security breach, unauthorized access, unauthorized use or misuse of any Computer Systems; [or]
>
> 5. Theft, unauthorized use or misuse of any login information, access information or identification, or personally identifiable information including, but not necessarily limited to, any password, username, social security number or other code or identified intended for use in accessing any Computer System, account, website or the internet[.]

Id.

"Computer systems" is defined as "computers, information systems, servers, hardware, software, and associated input and output devices, data storage devices, networking equipment, back up facilities and any other associated or connected electronic devices, including mobile devices." Id.

"Damages" is defined in the Policy as any "[m]onetary award by way of judgment or final arbitration, or any settlement"; the Policy specifically excludes from the definition of "Damages", in relevant part:

> 6. Restitution, reduction, disgorgement, or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any

manner directly or indirectly controlled by an Insured;
[or]

7. Injury or damage to, destruction of, loss of, or loss of use of any funds property.

Id.

The policy does not apply to:

"ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property.

Id. at 7 (emphasis in original).

Further, it does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]" Id.

The policy requires the following of an insured:

"If the insured received notice of a Claim, or becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, then the Insured must, as a condition precedent to the Company's obligation to defend or indemnify any Insured, immediately deliver a written notice directly to the Company via email, facsimile, or mail . . ." (Dkt. No 1-5 at 7).

Additionally, "such notice shall include the fullest information obtainable concerning the potential Claim." Id. at 14.

5

**ORDER DENYING MOTION TO DISMISS (Dkt. No. 10) AND STAYING CASE**

By correspondence dated May 6, 2019, Murphy notified ALPS of a potential claim arising over the loss of the settlement payment (Dkt. No. 1 at 7). By correspondence dated May 17, 2019, he provided ALPS with additional information regarding the potential claim and demanded that ALPS defend him in connection with the potential claim.[1] Id. On June 5, 2019, ALPS provided Murphy with its coverage position as to the potential claim. Id. As of the date it filed the complaint, ALPS was unaware of any demands or claims asserted against Murphy by United Bank, Parmer, or any other potential claimant arising out of the loss of the settlement payment. Id.

## II. DISCUSSION

Murphy argues that the complaint filed by ALPS should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because "[t]here is not a claim," only a potential insurance claim. (Dkt. No. 11 at 1). He states that no one has sued him (other than ALPS) and that no third party has informed ALPS that it seeks compensation based on any occurrence in the United Bank case. Id. at 2.

---

[1] In ALPS's response to Murphy's motion to dismiss, ALPS states that it denied Murphy's request for a defense (Dkt. No. 14 at 5).

He further argues that the United Bank matter, including the settlement of the state case between United Bank and Parmer in Monongalia County, as well as the question of who is responsible for the loss of funds, continues to be litigated as he recently filed a petition for Writ of Prohibition in the West Virginia Supreme Court of Appeals on August 22, 2019. Id. Murphy alleges that the outcome of that litigation may eliminate with the "potential claim or even create other claims altogether." Id. Murphy also argues that the complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the matter is not ripe for review and the Court therefore does not have subject matter jurisdiction. Id. at 2-3.

ALPS contends that the policy does not afford coverage for the potential claim because of the unambiguous language and exclusions in the policy(Dkt. No. 1 at 8, 10, 12). ALPS further argues that its declaratory judgment action is justiciable as a case or controversy even though a complaint or other litigation has not commenced against Murphy because of the parties' conflicting, adverse legal interests (Dkt. No. 12-3 at 9).

After considering the parties' briefs and following oral argument, the Court concludes that it has jurisdiction to hear this

case and that the plaintiff has stated a claim upon which relief may be granted.

**A. Legal Standard**

When reviewing a Rule 12(b)(6) motion to dismiss, a district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Accordingly, in order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

8

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(1), which permits dismissal of a complaint for "lack of subject matter jurisdiction," places the burden of proving jurisdiction is on the plaintiff. Adams v. Bain, 997 F.2d 1213, 1219 (4th Cir. 1982). Dismissal for lack of jurisdiction is proper if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Carroll v. Nw. Fed. Credit Union, 770 Fed. App'x 102, 103-04 (4th Cir. 2019).

**B. Analysis**

"The Federal Declaratory Judgment Act provides that district courts 'may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting 28 U.S.C. § 2201(a)). "The Fourth Circuit has explained that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Id. (citation omitted). "It should not be used 'to

try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" Id. at 256-57 (citation omitted).

A case meets the actual controversy requirement when it qualifies as such under Article III of the Constitution. Volvo Const. Equip. North America, Inc. V. CLM Equip., Co., Inc., 386 F.3d 581 (4th Cir. 2004). In Volvo, a manufacturer brought a declaratory judgment action against equipment dealers in a contract dispute even though the dealers had not filed suit against the manufacturer. The Fourth Circuit affirmed the district court's decision to exercise jurisdiction on the action, explaining that declaratory relief may be appropriate to avoid "the accrual of potential damages for past actions." Id. at 593. When Volvo initiated its action it had a "reasonable apprehension . . . of litigation" because it had terminated the contract with the dealers, had received litigation threats, and separate but similar suits had been filed in other Courts. Id. Thus, the Fourth Circuit held that an actual controversy existed between the parties. Id. at 594.[2]

---

[2] Other district courts in the Fourth Circuit have likewise presided over declaratory judgment actions prior to the filing of

**ORDER DENYING MOTION TO DISMISS (Dkt. No. 10) AND STAYING CASE**

Here, ALPS points to an actual controversy giving rise to its declaratory action based on Murphy's demand that ALPS provide him with its "position in this matter":

> (1) this matter is unquestionably going to come to a head in the immediate future and require Court intervention, (2) [c]learly, [defendants] anticipate and expect the assistance and cooperation of ALPS in this matter, including but not limited to the assistance of counsel, (3) United Bank intends to pursue . . . a claim against Defendants, (4) this is a very serious matter ($212,500.00 is at stake) and . . . the potential for significant damages is real and pressing, (5) Defendants have engaged in no conduct nor taken any actions that would case any exclusion under [the] [P]olicy to be operable; and (6) Defendants need, expect and fully anticipate the unreserved assistance of ALPS in protecting [Defendants] position in this matter.

Id. at 10-11 (internal quotations omitted).

These statements put ALPS in reasonable apprehension of claim litigation sufficient to request clarification by a court. Murphy's client, Parmer, faces a state court order to again pay $212,500, even though she previously wired that money to Chase Bank at the

---

an insurance claim. E.g. Colony Ins. Co. V. Hucks Pool Co., No.4:17-cv-02014-RBH, 2018 WL 902295, at *3 (D.S.C. Feb. 15, 2018) (declaratory judgment judiciable based on notice of imminent claim); Minn. Lawyers Mut. Ins. Co. v. Tavss, No. 2:13cv654, 2014 WL 12591665, at *6 (E.D. Va. May 27, 2014) (same when insurer received notice of potential damages); Firemen's Ins. Co. of D.C. v. Kline & Son Cement Repair, Inc., 474 F. Supp. 2d 779, 785-86 (E.D. Va. 2007) (same even though claimant had not yet filed suit against insured; explaining that even a potential claim . . . is sufficient to cause fear and jeopardy and thus to warrant the institution of an action for a declaration of non-liability).

direction of Murphy. As a consequence, Murphy has requested coverage and defense from ALPS because he anticipates a claim arising out of the loss of the settlement money. Murphy also has alleged that the terms of the policy do not exclude coverage or representation, which is akin to a demand for coverage under the policy. Accordingly, based on Murphy's demand, ALPS's complaint is based on an actual controversy making the claim ripe for review. Dismissal under Rule 12(b)(1) is therefore unwarranted.

Moreover, in its complaint, ALPS has provided policy language supporting its position of no coverage. For instance, as defined in the policy, the term "claim" includes "demands," but is "not necessarily limited to" the services of a suit or the institution of arbitration or other ADR proceedings. Further, ALPS has pointed to certain exclusions showing a true conflict between the parties as to rights and responsibilities. Thus, declaratory relief here would serve the useful purpose of clarifying legal relations in dispute.

Finally, it is worth observing that, although ALPS is not a party to the United Bank case and the only issues in the petition for Writ of Prohibition pending before the state supreme court involve the settlement agreement between Parmer and United Bank, the nature of the underlying state action may result in a decision

placing Murphy at risk of a judgment against him. On the other hand, the result may do away with the potential claim altogether. In either event, at this point there is no final order in the underlying state court proceedings. Prudence therefore dictates that a stay of the proceedings in this case pending the outcome of the petition pending in the state supreme court would conserve judicial resources and help clarify whether the claims in the pending state action are related to those in the instant declaratory judgment action. Accordingly, the Court **STAYS** the case pending notification by the parties regarding the state supreme court's decision on the pending petition for Writ of Prohibition.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Murphy's motion to dismiss (Dkt. No. 10) and **STAYS** the case pending notification by the parties of the state supreme court's decision on Murphy's Writ of Prohibition.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and terminate all pending deadlines.

DATED: October 11, 2019

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
