**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ALPS PROPERTY & CASUALTY
INSURANCE COMPANY,**

        **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 1:19CV132**
                                                **(Judge Keeley)**

**S. SEAN MURPHY, ESQUIRE and
S. SEAN MURPHY, PLLC,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

---

The plaintiff, ALPS Property & Casualty Insurance Company ("ALPS"), seeks a declaratory judgment that it has no obligation to defend or indemnify the defendants, S. Sean Murphy, Esquire, and S. Sean Murphy, PLLC (collectively, "Murphy"), in any insurance claim arising out of the loss to an unknown criminal actor of a settlement payment from Murphy's client, Betty J. Parmer ("Parmer"), to United Bank, Inc. ("United Bank"). That settlement was intended to resolve an underlying dispute in the Circuit Court of Monongalia County, West Virginia (Dkt. No. 1).

Now pending is ALPS's motion for summary judgment against Murphy (Dkt. No. 22). Having examined the relevant policy language in conjunction with pleadings in the underlying state court action, the Court **GRANTS** the motion (Dkt. No. 22) and **DECLARES** that ALPs has no duty to defend or indemnify Murphy on any claims arising out of the lost settlement payment.

ALPS v. MURPHY                                          1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

### I. BACKGROUND

At the outset, Murphy contends that there are several disputed facts which form the basis of this case (Dkt. No. 24). Accordingly, the Court has indicated where facts are in dispute and, as it must, has viewed those facts in the light most favorable to Murphy, the nonmoving party. See Providence Square Assocs., LLC v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000).

**A.    The Wire Transaction**

This dispute arises out of Murphy's representation of Parmer in a collection action involving United Bank, styled United Bank, Inc. v. Parmer, Civil Action No. 17-C-210 (Cir. Ct. Monongalia Cty., W. Va.) ("the United Bank case") (Dkt. No. 23 at 2). According to ALPS, on April 4, 2019, Parmer and United Bank mediated their dispute, with Parmer agreeing to pay United Bank a confidential settlement amount. Id. at 3. Although Murphy now contends that the agreement is invalid, at the relevant time he "believed that the settlement agreement signed at the mediation was controlling and did represent a meeting of the minds." (Dkt. No. 11-1 at 13, 17-18).

In accord with his understanding at the time, on April 11, 2019, at 7:06 A.M., Murphy requested wire instructions via email

ALPS v. MURPHY                                         1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

for the settlement payment from counsel for United Bank, Sean P. George ("George") (Dkt. No. 1 at 2). At 9:39 A.M., George responded to Murphy's email, stating "Will request them and forward on receipt." Id. at 3. At 2:41 P.M. the same day, a person or persons apparently posing as George emailed Murphy wire instructions from George's email account, indicating that the payment should be transferred to Chase Bank. Id. Murphy contends there is no evidence to establish the true nature of the 2:41 P.M. email, arguing that the email could have been a mistake or have come from George himself (Dkt. No. 24 at 2).

Murphy provided the Chase Bank instructions to Parmer's bank, Fulton Bank, by forwarding the 2:41 P.M. email (Dkt. Nos. 1 at 3; 11-1 at 16). On April 15, 2019, Fulton Bank, on behalf of Parmer, wired the settlement payment according to the wire instructions provided by Murphy. Id. Thereafter, on May 3, 2019, George informed Murphy that United Bank had never received the payment. Id. The loss was reported to Fulton Bank, Chase Bank, and the Federal Bureau of Investigation, but the settlement payment was not recovered. Id.

### B.    Settlement and Coverage Disputes

ALPS issued Lawyers Professional Liability Insurance Policy

3

ALPS v. MURPHY                                          1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

No. ALPS15426-7 ("Policy") to S. Sean Murphy, PLLC for the policy period August 31, 2018 to August 31, 2019, listing S. Sean Murphy, Esquire, as the sole individual insured under the Policy (Dkt. No. 23 at 6). By correspondence dated May 6, 2019, Murphy notified ALPS of a potential insurance claim arising out of the settlement payment loss. Id. at 8. On May 17, 2019, he provided ALPS with additional information, explaining that George "intends to pursue . . . a claim" against Murphy on behalf of United Bank, and demanding that ALPS defend him in connection with the potential claim. (Dkt. No. 14-1 at 2).[1]

Separately, on May 23, 2019, George asserted in a letter to Murphy that the wire instructions Murphy forwarded to Fulton Bank were incorrect, stating he had not provided Murphy with "bogus instructions" and alleging that "Ms. Parmer's bank and [Murphy] had a duty to verify the instructions as accurate before acting upon

---

[1]    The policy requires the following of an insured (Dkt. No. 1-5 at 7):

> "If the insured received notice of a Claim, or becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, then the Insured must, as a condition precedent to the Company's obligation to defend or indemnify any Insured, immediately deliver a written notice directly to the Company via email, facsimile, or mail . . ."

ALPS v. MURPHY                                          1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

them." _Id._ at 4. Murphy contests the veracity of George's statement, but does not contest that George made such an assertion (Dkt. No. 24 at 3).

ALPS subsequently denied Murphy's request for coverage on June 5, 2019, and filed a declaratory action in this Court on July 1, 2019. _Id._ While this case was pending, on July 23, 2019, United Bank filed a motion to enforce the April 4, 2019 settlement agreement in the United Bank case. _Id._ By order dated August 14, 2019, the Monongalia County Circuit Court ("Circuit Court") granted the motion and ordered Parmer to execute the proposed settlement agreement and again pay the settlement amount despite her prior payment. _Id._ at 5.

Thereafter, on September 5, 2019, Murphy, on behalf of Parmer, filed a Writ of Prohibition ("Writ") with the West Virginia Supreme Court of Appeals to prohibit the Circuit Court from enforcing the settlement. _Id._ While the Writ was pending, this Court, on October 11, 2019, denied Murphy's motion to dismiss for lack of jurisdiction and failure to state a claim and stayed the case. _Id._ After the West Virginia Supreme Court of Appeals denied the Writ, the Court lifted the stay and set a briefing schedule (Dkt. Nos. 18-1, 20, 21).

ALPS v. MURPHY                                              1:19CV132

## MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

Finally, the Circuit Court held a hearing to discuss the resolution of the United Bank case and, on December 6, 2019, ordered United Bank to submit the signed settlement agreement and release to Murphy and directed Murphy to execute the settlement agreement and release within ten days; if Murphy failed to do so, the settlement agreement and release would be adopted (Dkt. No. 22-1). Here, Murphy concedes that, pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the Circuit Court's December 6, 2019 order, but argues that the order was not the result of thorough fact-finding (Dkt. No. 24 at 3). Although Murphy is now appealing the United Bank case, the declaratory judgment action in this Court is fully briefed and ripe for disposition.

### II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). The Court must avoid weighing the evidence or determining its truth, and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477

6

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur.

ALPS v. MURPHY                                          1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)). Where, as here, a declaratory judgment action is based on diversity jurisdiction, the Court must apply West Virginia substantive law, as it is the state in which the subject policy was issued. See Beckley Mechanical, Inc. v. Erie Ins. & Cas. Co., 374 Fed. Appx. 381, 383, n.1 (4th Cir. 2010) (citing Erie R.R. v. Thompkins, 304 U.S. 64 (1938).

Under West Virginia law, liability insurance policies establish two main duties on the part of the insurer, the duty to defend and the duty to indemnify. See, e.g., Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (W. Va. 1986); Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765 (4th Cir. 1978). As a general rule, an insurer's duty to defend is triggered when "the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Pitrolo, 342 S.E.2d at 160; see also Syl. Pt. 2, Farmers & Mechanics Mut. Ins. Co. of W. Va. v. Cook, 557 S.E.2d 801, 802 (W. Va. 2001). If any of the claims against the insured might trigger coverage, the insurer must defend against all the claims asserted. See Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W. Va. 1988) (citing Donnelly, 589 F.2d at 765).

ALPS v. MURPHY                                         1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

Nevertheless, the insurer need not provide a defense if the claims against its insured are "entirely foreign to the risk insured against." Air Force Ass'n v. Phoenix Ins. Co., 1990 WL 12677, at *2 (4th Cir. 1990) (citing Donnelly, 589 F.2d at 765). Further, under West Virginia law, the duty to indemnify is narrower than the duty to defend, encompassing an insurer's "responsibility to pay a monetary award when its insured becomes liable for a covered claim." ALPS Prop. & Cas. Ins. Co. v. Bowles Rice, LLP, No. 1:18CV29, 2018 WL 3639832, at *6 (N.D.W. Va. July 31, 2018) (citing Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. Of Am., 448 F.3d 252, 257-58 (4th Cir. 2006)).

The specific wording of an insurance policy determines whether it provides coverage for a particular claim. See Beckley Mechanical, 374 Fed. App'x at 383; Cherrington v. Erie Ins. Property and Cas. Co., 745 S.E.2d 508, 524 (W. Va. 2013). Indeed, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 8, Cherrington, 745 S.E.2d at 511 (internal quotations and citations omitted). Courts should not endeavor to interpret policy provisions unless they are unclear or ambiguous. Id. Instead, courts must give terms and provisions their meaning in the "plain, ordinary and popular sense, not in a

9

ALPS v. MURPHY                                              1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

strained or philosophical sense." <u>Polan v. Travelers Ins. Co.</u>, 192
S.E.2d 481, 484 (W. Va. 1972); <u>see also</u> Syl. Pt. 9, <u>Cherrington</u>,
745 S.E.2d at 511.

## IV. DISCUSSION

ALPS contends that, under the plain and unambiguous terms of
the Policy, it not required to defend or indemnify Murphy for any
claim arising out of the lost settlement in the United Bank case
(Dkt. No. 22). Basing its argument on four separate provisions of
the Policy, it contends that there is no genuine issue of material
fact regarding the lack of coverage. In response, Murphy argues
that (1) ALPS does have a duty to defend or indemnify under the
Policy; (2) additional parties and insurance policies are necessary
for deciding this case; (3) and factual disputes make discovery
necessary and summary judgment premature (Dkt. No. 24 at 14).

As a threshold matter, Murphy's contention that the Court must
consider additional parties or insurance policies is both
procedurally improper and lacks merit. Following the Court's
determination on November 20, 2019 that discovery is not necessary
in this case (Dkt. No. 21), Murphy never moved for leave to join
additional parties or take discovery. Fed. R. Civ. Pro. 19, 20,
56(d). <u>See</u> <u>Pisano v. Strach</u>, 743 F.3d 927, 931 (4th Cir. 2014)

ALPS v. MURPHY                                                    1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

(upholding denial of a Rule 56(d) motion following a district court's determination that there was no need for discovery and when information would not create a genuine issue of material fact). Moreover, there are no other parties to the Policy contract or other contracts related to the discrete issue of whether the Policy provides coverage for the lost settlement payment in the underlying dispute.

Murphy's argument that summary judgment is premature also fails because no disputed facts are material. Although Murphy disputes the existence of a settlement agreement in the United Bank case and is currently appealing the issue, whether or not there is an agreement is immaterial to the question of coverage presented. It is only relevant that Murphy believed the agreement to be valid when he forwarded wire instructions to execute the settlement payment, which is now lost. It is telling that Murphy, pursuant to the Policy, notified ALPS of what he reasonably expected to be the basis of a claim by United Bank (Dkt. No. 1-5 at 7).

In addition, Murphy's contentions that ALPS may not rely on George's assertions that he did not provide Murphy with inaccurate wire instructions and that Murphy had a duty to verify the instructions is unavailing (Dkt. No. 24 at 2-3). The question

11

ALPS v. MURPHY                                        1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

rather is whether George's underlined allegations, which Murphy reported to ALPS as the basis for a potential claim, lead to an interpretation that the claim is covered. Pitrolo, 342 S.E.2d at 160 (emphasis added); see also Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 529 (4th Cir. 2015) (stating that an insurance has no duty to defend if the insurer would not be liable under its contract for any judgment based upon the allegations). Accordingly, although the Court views the evidence in the light most favorable to Murphy, no where in the record has he provided even a scintilla of evidence establishing that the wire instructions came from George or that he did not have a duty to verify the instructions before forwarding them on to the Fulton Bank. Further, as discussed below, the Court need not adjudicate the underlying facts in deciding coverage.

No further discovery, fact-finding, parties, or insurance policies are necessary to make a determination of whether the Policy ALPS issued to Murphy covers the loss at issue in the underlying dispute Murphy reported to ALPS. Accordingly, the Court will proceed to consider ALPS's motion for summary judgment (Dkt. No. 22).

12

ALPS v. MURPHY                                                    1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

**A.    Exclusion 3.H Precludes Coverage**

ALPS argues that the Policy does not afford coverage for the claim Murphy reported under Exclusion 3.H, which states that the Policy does not apply to:

> "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny conversion, misappropriation, wrongful disbursement, improper commingling or negligent supervision by any person of client or trust account funds or property, or funds or property of any other person, held or controlled at any time by an Insured in any capacity or under any authority, including any loss or reduction in value of such funds or property.

Dkt. No. 1-5 at 16.[2]

The language of Exclusion 3.H is quite broad, encompassing any claim either "arising from" or "in connection with" certain actions "by any person," not only the insured. Id. Indeed, other district courts and the Fourth Circuit have interpreted such an exclusion broadly. See Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout

_____

[2] The Policy's insuring agreement states, in relevant part, (Dkt. No. 1-5 at 8):

A.    COVERAGE

Subject to the limit of liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD[.]

ALPS v. MURPHY                                         1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

& Kraus, LLP, 472 F. App'x 219, 223 (4 th Cir. 2012) ("The phrase 'in connection with' is a common insurance phase that is given particularly broad scope."); Account Res., Inc. v. Hiscox, Inc., No. 3:15-cv-01764, 2016 WL 5844465, *1-2 (D. Conn. Sept. 30, 2016) (holding that a similar provision excluded a claim "regardless of who has done the thieving or misappropriating" because the phrase "arising out of . . . contemplates that the causal connection between the claim and a theft or misappropriation may well be an indirect one, and that in turn suggests that the exclusion may apply to wrongful conduct by third parties that goes undetected and unexposed by an [insured]").

Here, it is undisputed that loss of the settlement payment arose from Murphy's email forwarding to Fulton Bank the incorrect wire instructions, and resulted in the ultimate loss of the settlement funds. This establishes a casual connection between any claim for the lost funds and a misappropriation of the funds regardless of who sent Murphy the inaccurate wire instructions or if third parties also were involved. Accordingly, any claim against Murphy by Parmer or United Bank regarding the lost payment is connected to a "misappropriation" or "wrongful disbursement" of the settlement funds "by any person," whether or not that person is Murphy (Dkt. No. 1-5 at 16).

Murphy's argument that Exclusion 3.H does not preclude

ALPS v. MURPHY                                          1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

coverage because he did not have "actual, apparent, direct, or indirect control" over the lost settlement funds is unavailing. Although control is not defined in the Policy, the Court must give effect to the plain meaning of language in an insurance contract. Cherrington, 745 S.E.2d at 511. As such, control is defined as "the power or authority to manage, direct, or oversee" or the "power or authority to guide or manage." Control, Black's Law Dictionary (11th ed. 2019); Control, Merriam-Webster Collegiate Dictionary, Merriam Webster, https://www.merriam-webster.com/dictionary/control (last visited July 14, 2020).

The Court rejects Murphy's argument that Parmer "alone" directed the wire transfer because Murphy was not an authorized account holder nor held power of attorney over her account. (Dkt. No. 24 at 6-7).[3] Although it is unlikely that Fulton Bank would have transferred Parmer's funds without her approval, Murphy does not deny his involvement insofar as he provided Fulton Bank with the incorrect wire instructions, with Parmer's permission, and that Fulton Bank followed those instructions when it transmitted the settlement payment. Moreover, the Policy states that the control may be "at any time" and "in any capacity or under any authority"

---

[3] Notably, the policy requires that client finds be "held or controlled" by Murphy. This language is plainly disjunctive and ALPs does not contend that Murphy held the funds.

ALPS v. MURPHY                                                    1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

(Dkt. No. 1-5 at 16). Consequently, it is clear that because Murphy had the power and authority to direct the settlement payment during the time when he received and forwarded the instructions to Fulton Bank, he controlled his client's funds.

This conclusion is in accord with the holdings in other declaratory judgment actions where courts have held that a defendant exercises control over funds by directing that they be wired. See, e.g., Attorney Liab. Prot. Soc'y, Inc. v. Whittington Law Assoc., PLLC, 961 F. Supp. 2d 367, 373 n.3 (D.N.H. 2013) ("[S]everal courts have concluded that one exercises control over funds by directing that they be wired."). Therefore, there is no genuine dispute that the broad language of Exclusion 3.H prevents the applicability of the Policy to potential claims against Murphy.

**D.   Exclusion 3.I Precludes Coverage**

ALPS further argues that summary judgment is warranted because a separate exclusion ("Exclusion 3.I") also precludes coverage. Exclusion 3.I states that the Policy does not apply to "ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny dispute over fees or costs, or any Claim that seeks, whether directly or indirectly, the return, reimbursement or disgorgement of fees, costs, or other funds or property held or controlled at any time by an Insured[.]" (Dkt. No. 1-5 at 16). Here, again, the Policy's language is broad and, because it emphasizes the relief requested, would apply to any

ALPS v. MURPHY                                          1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

request by Parmer or United Bank for return or reimbursement of the lost settlement payment which Murphy controlled.

Murphy contends, in summary fashion, that this exclusionary language should be strictly construed against ALPS and that, because this is an "intentional acts" exclusion, he may only be denied coverage if he committed an intentional act and expected or intended the specific resulting damage (Dkt. No. 24). But his bare citations in support of these arguments provide no support for these contentions or reason for the Court to find the exclusion inapplicable. Neither the language of the policies at issue in the cases he cites nor the factual underpinnings of the disputes are similar to the case here.[4] Accordingly, for the same reasons that Exclusion 3.H precludes coverage, the Court concludes that Exclusion 3.I does as well.

### C. Loss of the Settlement Payment Does Not Constitute "Damages" Under the Policy

ALPS next contends that summary judgment is proper because any claim against Murphy for the lost settlement payment is excluded from the definition of damages under the Policy. The

---

[4] The first case Murphy cites involved an exclusion for care, custody, and physical control of a partially-built house that caught on fire. National Mut. Ins. Co. v. McMahon & Sons, Inc., 177 W. Va. 734, 356 S.E.2d 488 (1987). The second involved an intentional tort exclusion's application to the alleged sexual misconduct of an insured minor. W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 602 S.E.2d 483 (2004).

ALPS v. MURPHY                                                1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

Policy's insuring agreement provides coverage for sums that ALPS "becomes legally obligated to pay as Damages, arising from or in connection with a claim" (Dkt. No. 1-5 at 8). The Policy defines damages as any "[m]onetary award by way of judgment or final arbitration, or any settlement" and specifically excludes from the definition of damages:

> 6. Restitution, reduction, disgorgement, or set-off of any fees, costs, consideration or expenses paid to or charged by an Insured, or any other funds or property of any person or entity presently or formerly held or in any manner directly or indirectly controlled by an Insured; [or]

> 7. Injury or damage to, destruction of, loss of, or loss of use of any funds property.

Id. at 11-12 ("Definition 2.H.6" and "Definition 2.H.7," respectively).

Here, the plain language of the Policy once again establishes that ALPS is entitled to judgment as a matter of law. As to Definition 2.H.6, restitution is not defined in the Policy, but its common meaning is the "return or restoration of some specific thing to its rightful owner or status." Restitution, Black's Law Dictionary (11th ed. 2014). The term funds is commonly defined as "[a] sum of money or liquid assets established for a specific purpose," Fund, Black's Law Dictionary (11th ed. 2014). Any claim by Parmer or United Bank against Murphy for the return of the lost settlement money--which was established for the purpose of

18

**ALPS v. MURPHY**                                                    **1:19CV132**

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

performing under the alleged April 4, 2019 settlement agreement--would, therefore, not be considered damages under the Policy. Further, Definition 2.H.7 is also a plain and unambiguous exception to coverage because a claim for the settlement payment, which was undisputably lost to an unknown actor, would clearly be categorized as a "loss of . . . any funds property." (Definition 2.H.7).

Murphy argues that excluding the lost settlement payment from the definition of damages would permit ALPS to deny coverage in "practically every imaginable instance," resulting in an insurance agreement that is "void and in violation of public policy" (Dkt. No. 24 at 8). This argument fails because there are undoubtedly instances where a professional liability claim for damages does not include the loss of money or property. The Court need look no further than the Policy itself, which provides that damages include other monetary awards by way of judgment or final arbitration, or any settlement, as well as civil liabilities imposed under § 813(a) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a) (Dkt. No. 1-5 at 11). Murphy's argument lacks merit, and he has failed to give the Court a reason to declare the entire Policy void or in violation of public policy.

Murphy also contends that Definition 2.H.6 is ambiguous because it does not include the phrase "any person" found in

ALPS v. MURPHY                                          1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

Exclusion 3.H. He argues that this should lead the Court to an interpretation that the Policy excludes as damages only those funds actually under the control of or lost by an insured (Dkt. No. 24 at 10). Once again, because Murphy controlled the settlement funds, this argument fails. Moreover, as discussed above, Definition 2.H.7 sets forth an even broader exception to the definition of covered damages. Accordingly, summary judgment is appropriate for the independent reason that the lost settlement payment is plainly and unambiguously not considered damages under the Policy.

**D.   Loss of the Settlement Payment is Not a "Claim" Covered by the Policy**

Finally, ALPS has no duty to defend or indemnify any claim not covered under the Policy (Dkt. No. 1-5 at 8). A claim does "not mean nor does it include any demand, service, or proceeding arising from or in connection with any actual or alleged:"

> 5. Theft, unauthorized use or misuse of any login information, access information or identification, or personally identifiable information including, but not necessarily limited to, any password, username, social security number or other code or identifier intended for use in accessing any Computer System, account, website or the internet[.]

Id. at 10 ("Limitation 2.C.5").

Although the Fourth Circuit has not interpreted this language in a case involving fraudulent wire instructions, the Court turns once again to the plain language of the Policy in its determination

ALPS v. MURPHY                                              1:19CV132

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]

that Limitation 2.C.5 applies and precludes coverage. ALPS alleges that a criminal actor or actors orchestrated a fraudulent wire transfer by accessing George's email account, without his permission, and sending the "bogus" wire instructions from his email address, sgeorge@gandlaw.com (Dkt. No. 1-4). This action was undertaken without George's authority, meaning it was "unauthorized." It further was an unauthorized use of his "personally identifiable information," that is, his exact email account and address, unbeknownst to Murphy.

Murphy makes much of the fact that this limitation is based on George's assertion that he did not send the fraudulent wire instructions, arguing that "there is simply not one single fact" that confirms George's assertion (Dkt. No. 24 at 13). As discussed earlier, however, this argument fails because, in deciding coverage, the Court need not adjudicate the underlying facts. West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 490 (W. Va. 2004) (citing Corder v. William W. Smith Excavating Co., 556 S.E.2d 77, 80 (W. Va. 2001).

ALPS clearly alleges an unauthorized use of George's personally identifiable information (Dkt. No. 1 at 3). As well, Limitation 2.C.5 clearly states that a claim does not include any demand "arising from or in connection with any actual or alleged" unauthorized use (Dkt. No. 1-5 at 10) (emphasis added). That Murphy

21

ALPS v. MURPHY                                                    1:19CV132

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 22]**

may ultimately be successful in appealing the Circuit Court's order enforcing the settlement agreement, or that United Bank may not ultimately pursue a claim for the lost settlement payment as Murphy expects, are inconsequential to the potential insurance claim for which Murphy has demanded coverage and which forms the basis of the allegations here. The Court, therefore, concludes that ALPS has no duty to defend or indemnify Murphy based on the Policy and the record before it.

**V. CONCLUSION**

For the reasons discussed, the Court **GRANTS** ALPS's motion for summary judgment (Dkt. No. 22), and **DECLARES** that it has no duty to defend or indemnify Murphy on any claims arising out of the loss of settlement payment.

It is so **ORDERED**.

The Court **DISMISSES** this case with prejudice. Further, it **DIRECTS** the Clerk to enter a separate judgment order in favor of ALPS, to transmit a copy of this order to counsel of record by electronic means, and to strike the case from its active docket. DATED: July 20, 2020.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE